1  **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                         FOR THE DISTRICT OF ARIZONA

7

8  | Teimuraz Tsirekidze, On Behalf of) | No. CV-07-02204-PHX-FJM |
   Himself and All Others Similarly Situated,)

9            Plaintiff,                )       **ORDER**

10                                      )

   vs.                                  )

11                                      )
                                        )
12  Syntax-Brillian Corp., Man Kit (Thomas))
    Chow, John S. Hodgson, James Ching Hua)
13  Li, Wayne A. Pratt, Vincent F. Sollitto, Jr.,)
    Brean Murray Carret & Co., LLC,)
14  Canaccord Adams Inc., Grobstein)
    Horwath & Company LLP, Merrill Lynch,)
15  Pierce Fenner & Smith Incorporated,)
    Robert W. Baird & Co. Incorporated, and)
16  UBS Securities LLC                  )
                                        )
17            Defendants.               )
                                        )
18

19         The court has before it five motions to dismiss: (1) one filed by James Ching Hua Li

20  ("Li") and Man Kit (Thomas) Chow ("Chow") (doc. 129) and supporting memorandum (doc.

21  130); (2) one filed by Vincent F. Sollitto, Jr. ("Sollitto") and Wayne Pratt ("Pratt") (doc.

22  135); (3) one filed by John S. Hodgson ("Hodgson") (doc. 146); (4) one filed by Brean

23  Murray, Carret & Co., LLC, Canaccord Adams Inc., Merrill Lynch, Pierce, Fenner & Smith,

24  Inc., Robert W. Baird & Co. Inc., and UBS Securities LLC (collectively, "Underwriters")

25  (doc. 143); and (5) one filed by Grobstein Horwath & Company LLP ("Grobstein") (doc.

26  136). We also have before us lead plaintiff City of St. Clair Shores Police and Fire

27  Retirement System ("St. Clair Shores") and named plaintiff City of New Haven Policemen

28  and Firemen's Pension Fund's ("New Haven") (collectively, "plaintiffs") consolidated

1 response to individual defendants Li, Chow, Sollitto, Pratt, and Hodgson's motions to
2 dismiss (doc. 161), consolidated response to Underwriters' and Grobstein's motions to
3 dismiss (doc. 160), and defendants' replies (docs. 167, 165, 168, 166, & 164 respectively).
4 The court also has before it Li and Chow's request for judicial notice joined by Pratt, Sollitto,
5 Hodgson, and Underwriters (doc. 133), Grobstein's request for judicial notice (doc. 145),
6 plaintiffs' request for judicial notice (doc. 157), and plaintiffs' reply in support of request for
7 judicial notice and second request (doc. 176).

8        Also before the court is plaintiffs' motion for leave to amend the consolidated class
9 action complaint, proposed consolidated amended class action complaint, and motion to
10 provisionally seal (docs. 159, 162, & 154), responses filed by Li and Chow (doc. 169),
11 Sollitto and Pratt (doc. 170), Hodgson (doc. 173), and Underwriters (doc. 172), plaintiffs'
12 reply to individual defendants Li, Chow, Sollitto, Pratt, and Hodgson (doc. 180), and
13 plaintiffs' reply to Underwriters (doc. 177).

14                                    **I-Background**

15        Syntax-Brillian Corp. ("Syntax") sells liquid crystal display and high definition
16 televisions.[1] Between November and December 2007, four securities fraud actions were
17 filed in this court against Syntax and various of its officers alleging violations of the
18 Securities Exchange Act of 1934 ("1934 Act"). We consolidated these four actions and
19 appointed St. Clair Shores as lead plaintiff on April 4, 2008 (doc. 51). In February 2008,
20 New Haven brought a fifth action against Syntax under the Securities Act of 1933 ("1933
21 Act") based on Syntax's May 24, 2007 secondary public offering ("SPO"). New Haven
22 moved for consolidation of its claim and for appointment as lead plaintiff on April 7, 2008
23 (doc. 52). On June 3, 2008, we granted New Haven's motion to consolidate, but denied their
24 request to be appointed as lead plaintiff (doc. 57). St. Clair Shores filed a consolidated
25
26

27        [1]Syntax entered bankruptcy proceedings and was voluntarily dismissed as a party on
28 September 9, 2008 (doc. 106).

1  amended complaint on August 25, 2008 (doc. 95) and it is the sufficiency of that complaint
2  which defendants challenge.

3      Plaintiffs allege that defendants overstated profits and financial projections, concealed
4  shortfalls, and otherwise misled investors, causing an artificial inflation of Syntax's stock
5  price. Specifically, plaintiffs claim that defendants made several statements in financial
6  filings, investor calls, and the SPO documents regarding demand for their televisions that
7  were misleading or false. According to plaintiffs, Syntax's financials violated Generally
8  Accepted Accounting Principles ("GAAP") by improperly recording consignment sales to
9  an Asian distributor, South China House of Technology ("SCHOT"), and round-trip "tooling
10 deposits" made to Taiwan Kolin Ltd. ("Kolin").

11     The complaint contains five counts: (1) violation of Section 11 of the 1933 Act, 15
12 U.S.C. § 77k, on behalf of named plaintiff against all defendants; (2) violation of Section
13 12(a)(2) of the 1933 Act, 15 U.S.C. § 77l(a)(2), on behalf of named plaintiff against all
14 defendants; (3) violation of Section 15 of the 1933 Act, 15 U.S.C. § 77o, on behalf of named
15 plaintiff against Li, Chow, Sollitto, Pratt, and Hodgson; (4) violation of Section 10(b) of the
16 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §
17 240.10b-5, against Li, Chow, Sollitto, and Pratt; and (5) violation of Section 20(a) of the
18 1934 Act, 15 U.S.C. § 78t(a), against Li, Chow, Sollitto, and Pratt. Defendants move to
19 dismiss all claims.

20                            **II-Judicial Notice**

21     As an initial matter, we address the parties' requests for judicial notice. "Generally,
22 the scope of review on a motion to dismiss for a failure to state a claim is limited to the
23 contents of the complaint." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). We may,
24 however, consider exhibits that are properly attached to the complaint or documents upon
25 which the complaint "necessarily relies" and whose authenticity is not challenged. Id. In
26 addition, we may take judicial notice of "matters of public record" without converting a
27 motion to dismiss into a motion for summary judgment, "as long as the facts noticed are 'not

28

-3-

1   subject to reasonable dispute.'" Intri-Plex Tech., Inc. v. Crest Group, Inc., 499 F.3d 1048,

2   1052 (9th Cir. 2007) (citation omitted).

3       Li, Chow, Sollitto, Pratt, and Underwriters filed a single request for judicial notice of

4   twenty exhibits lettered A through T.  Exhibits A, C, D, E, G, I, J, K, L, N, O, P, R, S, and

5   T are Syntax public disclosures filed with the Securities Exchange Commission ("SEC").

6   Because these are "matters of public record" not subject to reasonable dispute, we will take

7   notice of all SEC filings attached to the defendants' motion.  Exhibits B, F, M, and Q are

8   final transcripts from Syntax earnings conference calls discussed in the complaint.

9   Complaint ¶¶ 143, 185, 154, 169.  As these are documents upon which the complaint relies

10  and the authenticity has not been challenged, we will take judicial notice of exhibits B, F, M,

11  and Q.  Finally, exhibit H purports to be a chart showing Syntax's stock prices from August

12  14, 2007 through November 17, 2007. The prices on the chart are consistent with those listed

13  in plaintiffs' complaint and the authenticity of the document has not been challenged.  We

14  will, therefore, take judicial notice of the stock prices provided in exhibit H as well.

15      Grobstein filed a separate request for judicial notice of three Syntax SEC filings.  We

16  will take judicial notice of these "matters of public record."[2]

17      Finally, plaintiffs request judicial notice by two separate motions.  They first request

18  that we take judicial notice of three transcripts from the Syntax bankruptcy proceedings on

19  August 20, 2008, October 6, 2008, and October 16, 2008.  By reply and "second request"

20  plaintiffs also ask that we take judicial notice of: (1) a complaint filed on November 26, 2008

21  against Syntax, Li, Chow, Sollitto, Pratt, and Hodgson in the United States Bankruptcy Court

22  for the District of Delaware; and (2) a complaint filed on November 26, 2008 against Li,

23  Chow, Sollitto, Pratt, Hodgson, and Grobstein in Superior Court in Los Angeles County.

24  Defendants do not challenge the authenticity of these documents and we will take judicial

25

26      [2] It is unclear why Grobstein chose to file a separate request rather than consolidate

27  its claims with those of the other defendants, particularly as one of the documents included
    in Grobstein's request is also an exhibit to the motion filed by the remaining defendants.  We

28  encourage cooperation between the parties on such matters in the future.

1  notice of them as "matters of public record." See United States v. Wilson, 631 F.2d 118, 119

2  (9th Cir. 1980); Rothman v. Gregor, 220 F.3d 81, 91-92 (2d Cir. 2000).  The court takes

3  notice of these records not as to the truth of the contents contained therein, but as to the

4  existence of the documents and the status of certain proceedings only.

5  ### III-Li and Chow

6      Defendants Li and Chow jointly move to dismiss plaintiffs' complaint for failure to

7  state a claim. Li served as Syntax's president and chief operating officer from 2005 to 2007

8  and as chief executive officer from October 2007 to June 2008.  Chow was the chief

9  procurement officer at Syntax until he resigned in April 2008.

10      Defendants principally argue that plaintiffs have not sufficiently plead a cause of

11  action under Section 10(b) of the 1934 Act and SEC Rule 10b-5. Section 10(b) prohibits

12  "any person" from using, "in connection with the purchase or sale of any security[,] . . . any

13  manipulative or deceptive device or contrivance in contravention of such rules and

14  regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 makes it

15  unlawful for any person

16      (a) To employ any device, scheme, or artifice to defraud, (b) To make any
untrue statement of a material fact or to omit to state a material fact necessary

17  in order to make the statements made, in light of the circumstances under
which they were made, not misleading, or (c) To engage in any act, practice,

18  or course of business which operates or would operate as a fraud or deceit
upon any person, in connection with the purchase or sale of any security.

19
20  17 C.F.R. § 240.10b-5(b).  The elements of a Rule 10b-5 claim are: "(1) a material

misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale
21
of a security; (4) transaction and loss causation; and (5) economic loss." In re Daou Sys.,
22
Inc., 411 F.3d 1006, 1014 (9th Cir. 2005) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336,
23
125 S. Ct. 1627, 1631 (2005)).
24
    Because it sounds in fraud, an action under 10(b) and 10b-5 must meet the heightened
25
pleading requirements of Rule 9(b), Fed. R. Civ. P., which requires plaintiffs to state with
26
particularity "the circumstances constituting fraud or mistake." Plaintiffs' Section 10(b)
27
claim must also meet the heightened pleading requirements of the Private Securities
28

1   Litigation Reform Act of 1995 ("PSLRA"). Id.  Under the PSLRA, plaintiffs must plead

2   with particularity both misrepresentations by defendants and an intent to defraud. Tellabs,

3   Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2505 (2007).

4                                **A. Alleged Misrepresentations**

5        Li and Chow argue that plaintiffs have not sufficiently plead the existence of

6   misrepresentations by defendants. Plaintiffs must "specify each statement alleged to have

7   been misleading, the reason or reasons why the statement is misleading, and, if an allegation

8   regarding the statement or omission is made on information and belief, the complaint shall

9   state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

10  Plaintiffs allege that defendants used two accounting schemes to overstate Syntax's financial

11  position: (1) consignment sales to SCHOT; and (2) round-trip transactions with Kolin.

12  Defendants claim that plaintiffs have not met the particularity requirements of the PSLRA

13  as to either scheme. We disagree.

14       First, defendants argue that plaintiffs' allegations regarding consignment sales are

15  insufficient because plaintiffs do not, nor are they able to, show a contemporaneous

16  agreement giving SCHOT a right to return unsold televisions. Plaintiffs have, however,

17  made several specific factual allegations that are sufficient to survive a motion to dismiss

18  under the PSLRA. Plaintiffs allege that Syntax maintained a receivables balance with

19  SCHOT at times in excess of $150 million dollars because payments were not due before

20  merchandise was sold to end-user customers. Complaint ¶ 212. According to plaintiffs,

21  Syntax stopped recording revenue from SCHOT until televisions were sold to end-user

22  customers in the first quarter of fiscal year 2008 (beginning July 1, 2007), which caused a

23  50% reduction in Syntax's fiscal year 2008 revenue guidance. Id. ¶ 85. In addition,

24  plaintiffs refer to Syntax's April 18, 2008 press release and form 8-K filing announcing that

25  its financial statements from fiscal year 2007 and the first quarter of 2008 may have to be

26  restated and should not be relied upon because "of specified accounting issues, including our

27

28

                                        - 6 -

1  tooling deposit accounting and sales transactions with certain of our Asian distributors."
2  Complaint ¶¶ 68-69.

3       The complaint also contains the report of a confidential witness, the corporate
4  controller and chief accounting officer for Syntax from August 2006 until October 2007,
5  regarding the nature of the SCHOT sales. Complaint ¶ 82 n.3. Plaintiffs' confidential
6  witness claims that payment terms on SCHOT's receivables balance were habitually
7  extended beyond those disclosed because SCHOT had no obligation to pay Syntax until
8  televisions were resold. Complaint ¶ 83. The witness also claims that from January to June
9  2007 approximately $100 million worth of 65" televisions were sold to SCHOT with the
10 agreement that SCHOT would not pay Syntax until it has re-sold the televisions. Id. ¶¶ 82-
11 83. Although the revenues for these sales were booked at the beginning of 2007, the
12 televisions were allegedly returned to Syntax between December 2007 and March 2008. Id.

13      To meet the particularity requirement of the PSLRA, "personal sources of information
14 relied upon in a complaint should be 'described in the complaint with sufficient particularity
15 to support the probability that a person in the position occupied by the source would possess
16 the information alleged.'" Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d
17 1226, 1233 (9th Cir.2004) (citation omitted). As the corporate controller and chief
18 accounting officer for Syntax, it is reasonable that plaintiffs' confidential witness would have
19 had access to the payment terms of the SCHOT transactions and revenue bookings. Taken
20 together, plaintiffs have adequately stated with particularity the facts upon which their
21 allegations of consignment sales are formed.

22      Second, defendants argue that plaintiffs have failed to sufficiently support their claim
23 that Syntax's "tooling deposits" with Kolin were round-trip transactions. A round-trip
24 transaction involves a scheme by which parties agree to exchange similar services for similar
25 amounts of money so that the transactions "wash out" without economic substance.
26 Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 178 (4th Cir. 2007). However, "[t]he
27 mere existence of reciprocal dealing does not suggest 'round-tripping.'" Id.

28

-7-

1     Plaintiffs' complaint alleges that in 2007, Syntax gave Kolin, a related party, between
2  $65 to $150 million in tooling deposits and in return received rebates on televisions
3  purchased from Kolin according to an earn-out schedule. Complaint ¶ 216. According to
4  plaintiffs, these were "sham" transactions for "artificially inflating the Company's profit
5  margin." Id. ¶ 217. Plaintiffs' confidential witness claims that on more than one occasion
6  Syntax wired money to Kolin with no documentation. Complaint ¶ 84 n.5. The witness also
7  claims that in 2007, Syntax and Kolin extended the "tooling deposit" earn-out schedule
8  instead of properly writing-off the uncredited amounts. Id. ¶ 217. Plaintiffs' confidential
9  witness was in a position to have knowledge of both allegations and we therefore accept
10 them as true for purposes of this motion.

11    Finally, plaintiffs again rely on Syntax's announcement that previous financial
12 statements should no longer be relied upon because "of specified accounting issues,
13 including our tooling deposit accounting." Id. ¶ 69. Although supported by less evidence
14 than the alleged consignment sales, taking all of plaintiffs' allegations as true, plaintiffs have
15 alleged round-trip transactions with enough particularity to survive a motion to dismiss under
16 the PSLRA.

17                                   **B. Scienter**

18    Defendants argue that plaintiffs have not sufficiently plead a strong showing of
19 scienter. The PSLRA requires that plaintiffs, "state with particularity facts giving rise to a
20 strong inference that the defendant acted with the required state of mind." 15 U.S.C.
21 § 78u-4(b)(2).  Plaintiffs must plead "in great detail, facts that constitute strong
22 circumstantial evidence of deliberately reckless or conscious misconduct." In re Silicon
23 Graphics Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999). "[A]n inference of scienter must be
24 more than merely plausible or reasonable--it must be cogent and at least as compelling as any
25 opposing inference of nonfraudulent intent." Tellabs, 127 S. Ct. at 2505.

26    Plaintiffs rely on five allegations to support an inference of scienter: (1) defendants'
27 termination and resignation; (2) defendants' personal financial incentives; (3) statements of
28

- 8 -

1   confidential witnesses regarding Li's involvement; (4) the nature of the allegedly misleading
2   statements given defendants' positions at Syntax; and (5) defendants' alleged GAAP
3   violations. We must decide whether these five allegations, "'even though individually
4   lacking, are sufficient to create a strong inference' of scienter." Glazer Capital Mgmt. v.
5   Magistri, 549 F.3d 736, 745 (9th Cir. 2008) (citation omitted).

6       Initially, we find that the personnel changes at Syntax do not support an inference that
7   Li and Chow acted with the required scienter. At most, these changes may provide some
8   indication of negligence by departing parties, but do not give rise to an inference of
9   knowledge or deliberate recklessness. We also find that defendants' executive bonuses are
10  not probative of scienter in this case. See Tachman v. DSC Commc'ns Corp., 14 F.3d 1061,
11  1068-69 (5th Cir. 1994) ("'[I]ncentive compensation can hardly be the basis on which an
12  allegation of fraud is predicated. On a practical level, were the opposite true, the executives
13  of virtually every corporation in the United States would be subject to fraud allegations.'")
14  (quotation omitted).

15      Nevertheless, plaintiffs have plead sufficient facts to raise a strong inference of
16  scienter as to Li and Chow. In particular, plaintiffs allege that confidential witnesses who
17  reported to Li claim Li was the "architect" of Syntax's relationship with SCHOT and was
18  "calling the shots" on Syntax's deals with Kolin. Complaint ¶¶ 83 n.4, 84 n.5. Plaintiffs also
19  allege that Chow sold a significant amount of stock only one month before Syntax changed
20  the method by which SCHOT sales were recorded and in the quarter immediately preceding
21  Syntax's dramatic revenue drop.

22      The inference that Li and Chow acted with scienter is also supported by the nature of
23  defendants' alleged misrepresentations given their positions at the company and by their
24  alleged violations of GAAP. See South Ferry LP, #2 v. Killinger, 542 F.3d 776, 785 (9th
25  Cir. 2008) ( "[A]llegations regarding management's role in a company may be relevant and
26  help to satisfy the PSLRA scienter requirement . . . along with other allegations that, when
27  read together, raise an inference of scienter that is 'cogent and compelling, thus strong in
28

-9-

1  light of other explanations.'") (citation omitted); In re McKesson HBOC, Inc. Sec. Litig., 126
2  F.Supp.2d 1248, 1273 (N.D. Cal. 2000) ("[W]hen significant GAAP violations are described
3  with particularity in the complaint, they may provide powerful indirect evidence of scienter.
4  After all, books do not cook themselves.").

5       Although no allegation is sufficient alone, taken together, plaintiffs' allegations
6  sufficiently support an inference that Li and Chow acted with knowledge or deliberate
7  recklessness as to the falsity of their representations.  Because plaintiffs have sufficiently
8  plead both material misrepresentations and a strong inference of scienter in accordance with
9  the PSLRA, Li and Chow's motion to dismiss plaintiffs' Section 10(b) claim is denied.

10  **C. Section 11 and Section 12(a)(2) Claims**

11       Plaintiffs' 1933 Act claims are based on representations in the registration statement
12  and prospectus (collectively, "offering documents") for Syntax's SPO.  Section 11 creates
13  a private right of action for the purchaser of a security if, "any part of the registration
14  statement, when such part became effective, contained an untrue statement of a material fact
15  or omitted to state a material fact required to be stated therein or necessary to make the
16  statements therein not misleading." 15 U.S.C. § 77k(a).  Plaintiffs must show: "(1) that the
17  registration statement contained an omission or misrepresentation, and (2) that the omission
18  or misrepresentation was material, that is, it would have misled a reasonable investor about
19  the nature of his or her investment."  Daou, 411 F.3d at 1027 (quoting In re Stac Elec. Secs.
20  Litig., 89 F.3d 1399, 1403-04 (9th Cir. 1996)).

21       Section 12(a)(2) creates liability for any person who sells securities using an
22  instrument containing an untruth or omission to an unaware purchaser. 15 U.S.C. § 77l(a)(2).
23  "Section 12(a)(2) is a virtually absolute liability provision that does not require an allegation
24  that defendants possessed scienter."  Miller v. Thane Int'l, Inc., 519 F.3d 879, 886 (9th Cir.
25  2008).  However, defendants must have solicited the purchase for their own financial gain.
26  Daou, 411 F.3d at 1029.

27

28

1        Plaintiffs have alleged several misrepresentations contained in and incorporated into
2  the offering documents.  These allegations are sufficient to meet the notice pleading
3  requirements of Rule 8, Fed. R. Civ. P.  In fact, Defendants Li and Chow do not argue that
4  plaintiffs' Section 11 and Section 12(a)(2) claims fail to meet Rule 8, Fed. R. Civ. P.,
5  pleading requirements.  Instead, defendants argue that plaintiffs' Section 11 and Section
6  12(a)(2) claims are subject to the heightened pleading requirements of Rule 9(b), Fed. R. Civ.
7  P., because they sound in fraud. Stac, 89 F.3d at 1403-04.  We disagree.

8        A claim sounds in fraud where plaintiffs allege "a unified course of fraudulent
9  conduct and rely entirely on that course of conduct as the basis of a claim." Vess v. Ciba-
10  Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  Although plaintiffs rely on the same
11  alleged consignment sales and "tooling deposits" in both their 1933 Act and 1934 Act claims,
12  they have expressly plead only negligence in their Section 11 and Section 12(a)(2) claims.
13  In addition, plaintiffs have carefully crafted the complaint so that their negligence-based
14  claims are wholly separate from their allegations of fraud against Li, Chow, Sollitto, and
15  Pratt.  See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 (3d Cir. 2006)
16  ("Because the Section 11 and Section 12(a)(2) claims of the plaintiffs here were expressly
17  negligence-based and pled distinctly in the complaint from the fraud-based claims, it was
18  error for the District Court to hold that they sound in fraud.").  Accordingly, we conclude that
19  plaintiffs' Section 11 and Section 12(a)(2) claims do not sound in fraud and are subject to
20  Rule 8, Fed. R. Civ. P., notice pleading requirements.

21        Because plaintiffs are not subject to a heightened pleading requirement, they have
22  sufficiently alleged a Section 11 and a Section 12(a)(2) claim against Li and Chow.

23

## D. Control Person Liability

24        Finally, Li and Chow argue that plaintiffs' claims under Section 15 and Section 20(a)
25  should be dismissed because they have not established a primary violation of either the 1933
26  Act or the 1934 Act. We disagree. For the reasons just discussed, we have concluded that
27
28

1  plaintiffs sufficiently plead primary violations of Section 10(b), Section 11, and Section
2  12(a)(2).

3  Defendants also contend that, even if plaintiffs have shown a primary violation, their
4  allegations of control person liability are too vague to maintain a cause of action. Whether
5  a party is a "controlling person" is an "intensely factual question." Kaplan v. Rose, 49 F.3d
6  1363, 1382 (9th Cir. 1994). Plaintiffs specifically allege that defendants had the power and
7  influence to control Syntax, which is sufficient to state a claim at this stage of the litigation.
8  See In re Metawave Commc'n Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1087 (W.D. Wash.
9  2003) ("At the motion to dismiss stage, general allegations concerning an individual
10 defendant's title and responsibilities are sufficient to establish control."). Therefore, we deny
11 Li and Chow's motion to dismiss plaintiffs' Section 15 and Section 20(a) claims.

12                                    **IV-Sollitto and Pratt**

13 Defendants Sollitto and Pratt, the former chief executive officer and chief financial
14 officer of Syntax respectively, move to dismiss plaintiffs' complaint on the same primary
15 bases as those argued by Li and Chow. Sollitto and Pratt contend that plaintiffs have not
16 alleged any actionable misstatements or the requisite strong inference of scienter required to
17 bring a claim under Section 10(b).

18 Defendants argue that their alleged misrepresentations are not actionable because of
19 the "safe harbor" provision of the PSLRA. The PSLRA creates a "safe harbor" for forward-
20 looking projections that are "accompanied by meaningful cautionary statements" and are
21 made without "actual knowledge" of falsity. 15 U.S.C. § 78u-5(c)(1)(A) & (B). Defendants
22 isolate three financial projections described by the complaint: (1) on May 10, 2007 estimating
23 the revenue for calendar year 2007; (2) on July 16, 2007 raising the estimated revenue for
24 calendar year 2007; and (3) on September 12, 2007 projecting revenues for the first quarter
25 of fiscal year 2008. Complaint ¶¶ 152, 162, 168. These statements were forward-looking
26 and plaintiffs have not sufficiently plead that Sollitto and Pratt knew they were false when
27
28

- 12 -

1   made. As a result, the PSLRA "safe harbor"applies and they are not actionable under Section
2   10(b).

3       However, plaintiffs allege several other false or misleading statements contained in
4   Syntax's financial reports, signed by Sollitto and Pratt, which defendants ignore. Complaint
5   ¶¶ 50, 52, 54, 59, 141, 142, 145-47, 154; see also Howard v. Everex Sys., Inc., 228 F.3d
6   1057, 1061 (9th Cir. 2000) (finding corporate officials may be responsible under Section
7   10(b) for representations made in corporate and financial documents they signed even if they
8   did not participate in drafting). For the reasons discussed as to Li and Chow, we conclude
9   that plaintiffs have alleged with sufficient particularity that these representations were false
10  or misleading based on the SCHOT and Kolin transactions.

11      Although plaintiffs have satisfied the first pleading requirement of the PSLRA, they
12  have failed to plead a strong inference that Sollitto and Pratt acted with knowledge or
13  deliberate recklessness. Plaintiffs rely on the same five allegations as those applicable to Li
14  and Chow. However, key differences lessen the inference that Sollitto and Pratt acted with
15  scienter. Unlike Li, plaintiffs have made no specific allegations regarding either Sollitto or
16  Pratt's involvement with the SCHOT or Kolin transactions. In addition, neither Sollitto nor
17  Pratt sold stock during the class period or received any incentive compensation in excess of
18  executive bonuses. Without either one of these specific factors, plaintiffs are left only with
19  two general allegations of scienter–the defendants' positions at the company given the nature
20  of the misrepresentation and alleged GAAP violation –each is insufficient to establish
21  scienter alone and together do not add up to a the required strong inference.

22      According to plaintiffs, the fact that Sollitto and Pratt signed Sarbanes-Oxley
23  certificates also supports an inference of scienter. We disagree. "Because Congress
24  expressed no intent to alter the pleading requirements of the PSLRA, 'Sarbanes-Oxley
25  certification is only probative of scienter if the person signing the certification was severely
26  reckless in certifying the accuracy of the financial statements.'" Glazer, 549 F.3d at 747
27  (citing Garfield v. NDC Health Corp., 466 F.3d 1255, 1266 (11th Cir. 2006)). Plaintiffs do
28

- 13 -

1  not allege that defendants were reckless in signing the Sarbanes-Oxley certificates, and the
2  mere fact that Sollitto and Pratt signed the certificates is insufficient to support an inference
3  of scienter.

4  Plaintiffs' Section 10(b) claim against Sollitto and Pratt is dismissed for a failure to
5  meet the pleading requirements of the PSLRA. In addition, plaintiffs' control persons claim
6  under section 20(a) is also dismissed for failure to allege a primary violation of the 1934 Act.
7  Paracor Fin., Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1161 (9th Cir. 1996).

8  Because plaintiffs' 1933 Act claims are subject to only notice pleading requirements,
9  plaintiffs have sufficiently stated a claim against defendants as to those counts. As a result,
10 counts one, two, and three remain as to defendants Sollitto and Pratt. All others are
11 dismissed.

12 **V-Hodgson**

13 John Hodgson was a director at Syntax and served as Syntax's chief financial officer
14 from October 2007 until March 2008. Plaintiffs added Hodgson as a defendant in their
15 amended complaint on August 25, 2008, asserting claims against him under Sections 11,
16 12(a)(2), and 15 of the 1933 Act. Hodgson moves to dismiss all claims.

17 First, Hodgson argues that plaintiffs have failed to identify any material
18 misrepresentation contained in the offering documents. We reject Hodgson's arguments.
19 As discussed, plaintiffs allege actionable misstatements contained in the SPO documents
20 sufficient to satisfy notice pleading requirements.

21 Next, defendant argues that the complaint must be dismissed because it was not filed
22 within the time allowed by the statute of limitations. Claims under Section 11 and Section
23 12(a)(2) must be "brought within one year after the discovery of the untrue statement or the
24 omission, or after such discovery should have been made by the exercise of reasonable
25 diligence." 15 U.S.C. § 77m. Plaintiffs must plead enough facts in their complaint "to
26 demonstrate conformity with the statute of limitations." Toombs v. Leone, 777 F.2d 465,

27
28

- 14 -

1    468 (9th Cir. 1985). Defendant argues that plaintiffs have not plead facts showing
2    compliance with the statute of limitations. We disagree.

3         Although not specifically labeled as such, the complaint contains facts demonstrating
4    conformity with the statute of limitations. The complaint describes the events that led to the
5    discovery of allegedly fraudulent behavior and plaintiffs' claims. Complaint ¶¶ 60-67.
6    Plaintiffs claim that they first discovered problems at Syntax through a September 12, 2007
7    press release warning of lower than projected revenues for the first quarter of fiscal year
8    2008. Plaintiffs' claims against Hodgson were brought within one year of that date.

9         Hodgson also contends that plaintiffs' Section 12(a)(2) claim against him must be
10   dismissed because he was not a "seller" of Syntax securities. To establish liability under
11   Section 12(a)(2), plaintiffs "must show that the defendant[] solicited purchase of the
12   securities for [his] own financial gain." Daou, 411 F.3d at 1029. As a director, Hodgson
13   had a financial interest in selling Syntax securities and plaintiffs allege that Hodgson
14   solicited purchasers of Syntax shares. Complaint ¶ 127. This is sufficient to proceed with
15   a Section 12(a)(2) claim against Hodgson. See In re Westinghouse Sec. Litig., 90 F.3d 696,
16   717 (3d Cir. 1996).

17        Hodgson also argues that the lead plaintiff cannot state a claim under Section 11
18   because its Syntax stocks cannot be traced to the SPO. Section 11 requires plaintiffs to show
19   that their Syntax stocks were issued under the challenged offering documents. Hertzberg v.
20   Dignity Partners, Inc., 191 F.3d 1076, 1080 (9th Cir. 1999). Plaintiffs concede that St. Clair
21   Shores cannot trace its shares to the SPO. However, the PSLRA does not require that a lead
22   plaintiff have standing to assert all claims against defendants, but only that they have the
23   greatest financial stake in the action. Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir.
24   2004). "Nor does anything in the PSLRA prevent the Lead Plaintiffs from constructing a
25   consolidated complaint that brings claims on behalf of a number of named parties besides the
26   Lead Plaintiffs themselves." In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 204
27   (S.D.N.Y. 2003). Plaintiffs crafted the complaint such that the Section 11 claim is brought
28

1  on behalf of named plaintiffs whose shares were allegedly purchased in the SPO. Complaint
2  ¶ 43. As a result, plaintiffs have adequately asserted "traceability" for purposes of a motion
3  to dismiss.[3]

4      Finally, defendant moves to dismiss plaintiffs' Section 15 claim on the grounds that
5  plaintiffs failed to allege primary violations of the 1933 Act. Because we have concluded
6  that plaintiffs have sufficiently pled Section 11 and Section 12(a)(2) claims, defendant's
7  motion is denied.

8  **VI-Underwriters**

9      In their August 2008 complaint, plaintiffs also added Section 11 and Section 12(a)(2)
10  claims against the five financial firms that served as underwriters for Syntax's SPO.
11  Underwriters move to dismiss all claims relying on many of the same arguments made by
12  Hodgson. In particular, Underwriters also argue that: (1) plaintiffs cannot trace their shares
13  to the SPO; (2) they were not "sellers" for purposes of a Section 12(a)(2) claim; (3) plaintiffs
14  have failed to allege any actionable misrepresentations; and (4) plaintiffs' claims are barred
15  by the statute of limitations. For those reasons previously discussed, we reject these
16  arguments.

17      Underwriters also argue that named plaintiff, New Haven, has not been properly
18  added to this action and that, if it wishes to be, we should undertake another class notice
19  according to the PSLRA. We disagree and direct Underwriters to our order dated June 3,
20  2008 (doc. 57), in which we granted New Haven's motion for consolidation and considered
21  but denied its motion for appointment as lead plaintiff. Because we have already decided the
22  lead plaintiff inquiry as to these plaintiffs, we see no need to repeat this process.

23      Defendants also argue that, even if sufficiently alleged, the misrepresentations on
24  which plaintiffs rely are not material. However, materiality is generally not decided in a

25  

26      [3]Defendant also contends that plaintiffs lack standing to bring a Section 12(a)(2) claim
27  because they have not shown that their stock purchase took place in the SPO rather than the
secondary market. However, the complaint sufficiently alleges that named plaintiff
28  purchased its Syntax shares in the SPO. Complaint ¶ 130.

- 16 -

1  motion to dismiss. SEC v. Phan, 500 F.3d 895, 908 (9th Cir. 2007). Prior to any discovery,
2  we will not determine the materiality of the SCHOT and Kolin transactions as a matter of
3  law.

4      Finally, Underwriters contend that the complaint must be dismissed because they
5  have established "negative causation." Plaintiffs are not entitled to damages for their Section
6  11 claim if defendants prove that the loss in value to Syntax securities is attributable to
7  something other than defendants' alleged misrepresentations. 15 U.S.C. § 77k(e). However,
8  "negative causation" is a defense to plaintiffs' Section 11 claim, not a pleading requirement.
9  Id. ("[I]f the defendant proves that any portion or all of such damages represents . . ."). 
10 Therefore, we will not determine whether defendant has proved "negative causation" at this
11 stage of the litigation.

12                        **VII-Grobstein**

13     Grobstein is an independent accounting firm that provided audit opinions for Syntax's
14 fiscal year 2004, 2005, and 2006 financials. Grobstein also consented to incorporation of
15 their 2005 and 2006 audit reports into Syntax's SPO. Plaintiffs added Grobstein to their
16 August 2008 complaint asserting claims under Section 11 and Section 12(a)(2).

17     Grobstein asks that plaintiffs' claims be dismissed because plaintiffs do not allege any
18 material misrepresentations made during the period in which Grobstein audited Syntax's
19 financials. But Grobstein had a duty to review information subsequent to the prior-period
20 financial statements for events that affect those financial statements and either modify its
21 audit opinions or withhold its consent. AICPA PROFESSIONAL STANDARDS, Statements on
22 Auditing Standards No. 37, § 711 (Am. Inst. Of Certified Pub. Accountants 1981).
23 According to plaintiffs, a reasonable investigation would have led to discovery of material
24 misrepresentations in the fiscal year 2004, 2005, and 2006 audit reports. Complaint ¶¶ 117-
25 120. Taken as true, plaintiffs' allegations sufficiently establish a prima facie Section 11
26 claim against Grobstein in its capacity as Syntax's outside auditor for the SPO.

27     Finally, Grobstein claims that it was not a "seller" of Syntax shares as required by
28

                              - 17 -

1  Section 12(a)(2). 15 U.S.C. § 77l(a)(2). We agree. Unlike other defendants, Grobstein did
2  not have any financial interest in selling Syntax shares and was not a significant participant
3  therein. Accordingly, plaintiffs' Section 12(a)(2) claim against Grobstein is dismissed.

4  ## VIII-Motion for Leave to Amend

5      Plaintiffs seek leave to amend their complaint. Primarily plaintiffs' proposed
6  amendments  incorporate into the complaint the testimony of: (1) Syntax's current CEO
7  Gregory Rayburn; (2) a court-appointed investigator; and (3) the Syntax-appointed
8  investigator from Syntax's ongoing bankruptcy proceedings.   All defendants except
9  Grobstein oppose plaintiffs' motion.

10      Defendants chiefly argue that plaintiffs' proposed amendments should not be allowed
11  because plaintiffs have not shown good cause for modifying our Rule 16 scheduling order
12  and that the changes proposed by plaintiff are futile. We agree. Plaintiffs have already
13  received ample opportunity to amend their complaint and we do not find it necessary to
14  disturb our Rule 16 scheduling order to allow the proposed amendments.

15      We have reviewed plaintiffs' proposed amendments and have determined that they
16  would have no effect on the outcome of the present motions to dismiss or the litigation as it
17  proceeds. Plaintiffs have not alleged any additional facts that would give rise to a strong
18  inference of scienter as to defendants Sollitto and Pratt. In addition, plaintiffs' proposed
19  amended complaint no longer includes a Section 12(a)(2) claim against Grobstein.
20  Accordingly, we deny plaintiffs' motion for leave to amend. Reddy v. Litton Indus., Inc.,
21  912 F.2d 291, 296 (9th Cir. 1990) (citation omitted) ("It is not an abuse of discretion to deny
22  leave to amend when the proposed amendment would be futile."). [4]

23  ## IX-Conclusion

24      Accordingly, **IT IS ORDERED DENYING** Li and Chow's motion to dismiss
25  (doc. 129).

26

27      [4] We are mindful that allegedly fraudulent misrepresentations upon which plaintiffs'
    Section 10(b) claim relies must be plead with specificity. However, plaintiffs' proposed
28  amendments neither add nor remove any alleged misstatements of defendants.

1    **IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN**

2  **PART** Sollitto and Pratt's motion to dismiss (doc. 135).  Plaintiffs' Section 10(b) and

3  Section 20(a) claims as to Sollitto and Pratt are dismissed, but their Section 11, Section

4  12(a)(2), and Section 15 claims remain.

5    **IT IS FURTHER ORDERED DENYING** Hodgson's motion to dismiss

6  (doc.146).

7    **IT IS FURTHER ORDERED DENYING** Underwriters' motion to dismiss (doc.

8  143).

9    **IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN**

10  **PART** Grobstein's motion to dismiss (doc. 136).  Plaintiffs' Section 11 claim survives

11  and all other claims against Grobstein are dismissed.

12    **IT IS FURTHER ORDERED DENYING** plaintiffs' motion for leave to amend

13  the complaint and modify the court's Rule 16 scheduling order (doc. 159).  **IT IS**

14  **FURTHER ORDERED DENYING** plaintiffs' motion to provisionally seal (doc. 154),

15  and requiring the clerk to file all lodged documents.

16    The claims remaining in this case are plaintiffs': (1) Section 11 claim as to all

17  defendants; (2) Section 12(a)(2) claim as to Li, Chow, Sollitto, Pratt, Hodgson, and the

18  Underwriters; (3) Section 15 claim as to Li, Chow, Sollitto, Pratt, and Hodgson; (4)

19  Section 10(b) claim as to Li and Chow; and (5) Section 20(a) claim as to Li and Chow.

20    DATED this 30th day of January, 2009.

22    Frederick J. Martone
23    Frederick J. Martone
     United States District Judge

- 19 -