1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teimuraz Tsirekidze, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> Syntax-Brillian Corp., Man Kit (Thomas) Chow, John S. Hodgson, James Ching Hua Li, Wayne A. Pratt, Vincent F. Sollitto, Jr., Brean Murray Carret & Co., LLC, Canaccord Adams Inc., Grobstein Horwath & Company LLP, Merrill Lynch, Pierce Fenner & Smith Incorporated, Robert W. Baird & Co. Incorporated, and UBS Securities LLC <br><br> Defendants. | No. CV-07-02204-PHX-FJM <br><br> **ORDER** |

Plaintiffs bring this proposed class action alleging that defendants violated the Securities Exchange Act of 1934 ("1934 Act") and the Securities Act of 1933 ("1933 Act"). We have before us lead plaintiff, City of St. Clair Shores Police and Fire Retirement System's ("St. Clair Shores"), and named plaintiff, City of New Haven Policemen and Firemen's Pension Fund's ("New Haven") (collectively, "plaintiffs"), motion for class certification (doc. 196), declarations of Kano Sams II ("Sams") and James Kottage in support of plaintiffs' motion (docs. 191 & 197, respectively), and notices of recent authority (docs. 209, 290 & 294). We also have before us James Ching Hua Li ("Li") and Man Kit (Thomas) Chow's ("Chow") response (doc. 260), supporting declaration of John Pernick (doc. 261), notice of recent authority (doc. 291), and response to plaintiffs' third notice of recent

authority (doc. 295). The court also has before it Brean Murray, Carret & Co., LLC, Canaccord Adams Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Robert W. Baird & Co. Inc., and UBS Securities LLC's (collectively, "Underwriters") response (doc. 263) and affidavit of Vinita Juneja (doc. 264). These responses have been joined by the remaining defendants, Vincent F. Sollitto, Jr. and Wayne A. Pratt (doc. 266), John S. Hodgson (doc. 267), and Grobstein Horwath & Company LLP (doc. 259).[1] The court also has before it St. Clair Shores' reply (doc. 273), New Haven's reply (doc. 274), declarations of Jonathan Behar and Steven Feinstein, and affidavit of Marc Steinberg (docs. 275, 276, & 277, respectively).

We also have before us Underwriters' motion to strike the affidavit of Marc Steinberg (doc. 279), plaintiffs' response (doc. 281), and Underwriters' reply (doc. 288). Underwriters claim that Steinberg's affidavit should be stricken as untimely because he was not disclosed as an expert until after the deadline set by the court's Rule 16 order, and they have been prejudiced thereby. Underwriters also argue that the affidavit is improper because it raises issues not addressed in plaintiffs' initial motion.

Underwriters' motion to strike is denied. Plaintiffs' failure to disclose Steinberg as an expert witness prior to the deadline set by our Rule 16 order has not prejudiced defendants because he is not a Rule 26 witness upon whom they intend to rely at trial. His opinion has been offered only as rebuttal to defendants' experts for purposes of this motion. In any event, to the extent any new arguments are raised by plaintiffs' reply, they will not be considered. See Gadda v. State Bar of Cal., 511 F.3d 933, 937 n.2 (9th Cir. 2007).

**I**

This action is a result of the financial troubles of Syntax-Brillian Corp. ("Syntax"), which sells liquid crystal display and high definition televisions. Plaintiffs allege that defendants, former Syntax officers, underwriters, and an independent auditor, overstated profits and financial projections, concealed shortfalls, and otherwise misled investors,

---

[1] Defendants Li and Chow also join in Underwriters' response to plaintiffs' motion for class certification (doc. 265).

causing an artificial inflation of Syntax's stock price. Lead plaintiff, St. Clair Shores, is a public retirement fund, which had purchased more than 10,000 shares of Syntax common stock. Named plaintiff, New Haven, purchased over 3,000 shares in Syntax's Secondary Public Offering ("SPO") on May 24, 2007.

Plaintiffs bring this action alleging: (1) violation of Section 11 of the 1933 Act, 15 U.S.C. § 77k, against all defendants; (2) violation of Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77l(a)(2), against Li, Chow, Sollitto, Pratt, Hodgson, and Underwriters; (3) violation of Section 15 of the 1933 Act, 15 U.S.C. § 77o, against Li, Chow, Sollitto, Pratt, and Hodgson; (4) violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Li and Chow; and (5) violation of Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), against Li and Chow.[2] Plaintiffs now move to certify a class consisting of those persons or entities who purchased or otherwise acquired Syntax securities between February 9, 2007 and November 14, 2007, as well as those who purchased or otherwise acquired Syntax common stock in the SPO. The proposed class excludes defendants, members of individual defendants' families, any entity in which defendants have a controlling interest or is a parent or subsidiary of, or is controlled by Syntax, and the officers, directors, employees, affiliates, legal representatives, heirs predecessors, successors and assigns of defendants.

**II**

Before we consider the issue of class certification, we address a threshold jurisdictional issue. Defendants argue that plaintiffs do not have standing to bring a claim under Section 11 or Section 12(a)(2) of the 1933 Act because they have failed to show that they purchased their shares in the SPO.[3]

---

[2]These are the claims that remain after our order on defendants' motions to dismiss (doc. 198).

[3]Although a question exists as to whether this issue is appropriately considered under an Article III standing or Rule 23(a)(4) adequacy of representation analysis, see Gratz v. Bollinger, 539 U.S. 244, 263 & n.15, 123 S. Ct. 2411, 2423 & n.15 (2003), we conclude that

- 3 -

As to lead plaintiff, we previously addressed its standing to bring 1933 Act claims in our order dated February 4, 2009, and direct defendants to the discussion on pages fifteen and sixteen of that order (doc. 198). While we agree that lead plaintiff does not have standing to assert either Section 11 or Section 12(a)(2) claims, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." See Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004). As discussed in our prior order, the complaint has been crafted such that claims under the 1933 Act are brought on behalf of named plaintiffs whose shares were allegedly purchased in the SPO.

Defendants now contend that named plaintiff lacks standing to bring a Section 12(a)(2) claim because it cannot show that it purchased shares in the SPO. "Under Section 12(a)(2), a 'claim may only be maintained by a purchaser who purchased [securities] in the public offering at issue rather than in a secondary market transaction." Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) (quotation omitted). Defendants' own exhibit shows, however, that, at a minimum, named plaintiff purchased stock for $5.75, the SPO offering price, on May 24, 2007, the day of the offering, from Merrill Lynch, an underwriter of the SPO. Underwriters Response, Ex. A at 1. This evidence in conjunction with the allegation in the amended complaint that named plaintiff purchased shares directly from the SPO, Consolidated Amended Complaint ¶ 43, is sufficient to establish standing at this stage of the proceedings.

**III**

Before we may certify a class, plaintiffs must satisfy the requirements of both Rule 23(a) and (b), Fed. R. Civ. P. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974) (quotation omitted). We are,

---

plaintiffs satisfy either test.

therefore, "bound to take the substantive allegations of the complaint as true," but may consider extrinsic evidence offered by the parties to make an informed judgment on each of Rule 23's requirements. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

### A. Rule 23(a)

Under Rule 23(a), plaintiffs must establish (1) numerosity of the parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses between the class representatives and the class; and (4) adequacy of representation. Plaintiffs maintain that all four requirements of Rule 23(a) are met, but defendants argue that plaintiffs are unable to show commonality, typicality, or adequacy of representation.

### 1. Numerosity

A class meets Rule 23(a)'s numerosity requirement if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The parties do not dispute that plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a). Syntax's stock traded actively during the class period, with an average of over three million shares trading daily. Sams Declaration, Ex. A ¶ 30. Joinder of all parties who purchased Syntax stock during the class period would be impracticable.

### 2. Commonality

A class has sufficient commonality if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality factor is construed permissively, and "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Defendants argue that the claims of the proposed class lack commonality because the proposed class includes purchasers who sold their stock at a gain. We disagree.

Defendants argument conflates the issue of damages with commonality of legal or factual issues. The gravamen of plaintiffs' complaint is that defendants made several statements in financial filings, investor calls, and the SPO documents regarding demand for Syntax televisions that were misleading or false, which artificially inflated the price of

1 Syntax stock. Although members of the putative class may be entitled to different amounts
2 of redress, and some may not be entitled to any, their claims stem from the same source – the
3 artificial inflation of Syntax stock prices.

### 3. Typicality

Plaintiffs must also establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P., Rule 23(a)(3). "We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." Armstrong v. Davis, 275 F.3d 849, 869 (9th Cir. 2001) (citation omitted). Although lead plaintiff did not purchase shares in the SPO, and thus does not have injuries under the 1933 Act, the addition of named plaintiff ensures that a class representative's injuries resulted from the same course of conduct regarding the SPO.

Nonetheless, defendants argue that named plaintiff's claims are not typical of other putative class members because named plaintiff sold its shares on September 13, 2007, before material information regarding Syntax's alleged misconduct was disclosed. The "typicality" requirement does not, however, require that plaintiffs' claims be identical to those in the proposed class. "[D]ifferences in the amount of damages, the size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases." Weinberger v. Thornton, 114 F.R.D. 599, 603 (S.D. Cal. 1986) (citation omitted); see also Welling v. Alexy, 155 F.R.D. 654, 662 (N.D. Cal 1994) ("'[T]ypicality does [not] require uniformity of damages' and the fact that one proposed representative sold part of his stock before the end of the class period 'does not, in and of itself, affect his standing as a class representative.'") (quotation omitted). Named plaintiff's claims derive from the same legal theories and involve the same set of facts as those of the putative class. We find no basis for defendants' claim that named plaintiff would not vigorously represent the interests of those who sold Syntax stock later than September 13, 2007.

**4. Adequacy of Representation**

Finally, Rule 23(a) requires that representative parties are able to "fairly and adequately protect the interest of the class." Two requirements must be established to show adequate representation: (1) plaintiffs "must appear able to prosecute the class action vigorously through qualified counsel;" and (2) plaintiffs "must not have antagonistic or conflicting interests" with the putative class members. Leverill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (citations omitted). Defendants do not dispute the adequacy of plaintiffs' lead counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin"),[4] and the record supports that Coughlin is qualified to litigate this matter. Defendants argue, however, that St. Clair Shores will not fairly and adequately protect the interests of the class because this is purely lawyer-driven litigation.

Defendants describe St. Clair Shores as a "serial plaintiff" with an ongoing relationship with Coughlin, and very little knowledge about the cases with which it is involved. They support their argument by citing James Haddad's, chairman of the board of directors of St. Clair Shores, deposition testimony. Haddad testified that he was not aware of the specific fraudulent misrepresentations alleged in this case, he did not read all of the interrogatory responses that he verified, and he did not know the facts of many other cases with which St. Clair Shores was involved. Pernick Declaration, Ex. B. Haddad also testified that he did not deal with or know about the fee arrangement between St. Clair Shores and Coughlin. Id.

We do not find Haddad's lack of knowledge about these matters fatal to lead plaintiff's ability to adequately represent the class. "Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit." Welling, 155 F.R.D. at 659 (citation omitted). Haddad's deposition testimony shows that he is aware of the general allegations in the complaint, although not the

---

[4] There is likewise no dispute that Buckley King is qualified to serve as liaison counsel in this action.

specific misrepresentations, as well as the amount of St. Clair Shores' stock losses. He is updated regularly regarding the case, and he monitors Coughlin's work. Behar Declaration, Ex. C. Moreover, Haddad understands that St. Clair Shores owes a fiduciary duty to all members of the putative class to obtain the best recovery for the class. Id. Although Haddad is less familiar with the facts of this action than he should be, his unfamiliarity is not so striking that lead plaintiff is unqualified to represent the class. See In re Nature's Sunshine Prod.'s Inc. Sec. Litig., 251 F.R.D. 656, 658 (D. Utah 2008) ("Courts have recognized that '[i]n a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'").

In addition, lead plaintiff does not have problematic traits that cause us to conclude that it would be an inadequate class representative. See Welling, 155 F.R.D. at 658-59; In re Cooper Co., Inc. Sec. Litig., 254 F.R.D. 628, 636-37 (C.D. Cal. 2009). Haddad's testimony shows that St. Clair Shores made the decision to invest in Syntax well before this litigation and without suggestion from counsel. Also, there is no indication that lead plaintiff lacks honesty or integrity, or would be subject to defenses not typical of the class.

Accordingly, we conclude that lead plaintiff, St. Clair Shores, has shown that it will fairly and adequately represent the proposed class. For the same reasons, we also conclude that named plaintiff, whose adequacy has not been challenged, is able to fairly and vigorously represent the interests of the proposed class. See Kottage Declaration (affirmatively stating that New Haven independently purchased Syntax stock, understands the allegations in the complaint, remains in constant contact with counsel, reviews motions and other documents filed in this case, and accepts the obligation to fairly represent and actively work with counsel and lead plaintiff to obtain the best recovery for the proposed class).

**B. Rule 23(b)**

Plaintiffs must also meet one of the requirements of Rule 23(b) for a class to be certified. They rely on Rule 23(b)(3), which requires (1) that common questions "predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs argue that common questions predominate because they have alleged a common course of conduct directed at all members of the proposed class. They also argue that a class action is superior to other methods of resolving this controversy because it allows common questions to be decided in a single action with binding effect on all parties.

### 1. Predominance of Common Questions

Whether common questions predominate depends upon the relationship between common questions and individual interests in the litigation. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." Hanlon, 150 F.3d at 1022.

#### a. 1934 Act claims

Ordinarily, any plaintiff bringing a Section 10(b) and Rule 10b-5 cause of action must show that it relied on a defendant's alleged misstatements. However, "[r]equiring proof of individualized reliance from each member of [a] proposed plaintiff class effectively would have prevented [plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones." Basic, Inc. v. Levinson, 485 U.S. 224, 242, 108 S. Ct. 978, 989 (1988). The "fraud-on-the-market" theory evolved to address this problem. Under this theory, "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." Id. at 247, 108 S. Ct. 978. Plaintiffs argue that they are entitled to a presumption of reliance for their Section 10(b) claim because Syntax stock traded on an efficient market.

Li and Chow, the only two defendants against whom claims under the 1934 Act remain, concede that Syntax stock traded on an efficient market reflecting public

information.[5] They argue, however, that plaintiffs are unable to show that the "fraud-on-the-market" presumption applies because nearly half of the putative class consists of short-sellers and market makers who did not rely on the integrity of the market.[6] Plaintiffs contend that this conflates the concept of market efficiency with price integrity and that all investors, including short-sellers and market makers, rely on the integrity of the market. See Feinstein Declaration ¶¶ 7-9, 24. We agree.

The "fraud-on-the-market" presumption endorsed in Basic is based on the understanding that in a complex market "[t]he market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price." Basic, 485 U.S. at 244, 108 S. Ct. 978 (quotation omitted). "Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." Id. at 241-42, 108 S. Ct. 978 (quotation omitted). Short-sellers and market makers depend on the market to provide accurate information regarding a company and its prospects whether or not they rely on the accuracy of a specific stock price or the prognosis for that price.

We conclude, therefore, that plaintiffs are entitled to a presumption of reliance based on the "fraud-on-the-market" theory.

### b. 1933 Act claims

---

[5] Indeed, plaintiffs have sufficiently shown that Syntax stock was traded on an efficient market. The stock was traded on the NASDAQ National Market at high volumes during the class period, was followed by financial analysts, had market makers, and information about Syntax was quickly incorporated into the price of its securities. Sams Declaration, Ex. A; see also Binder v. Gillespie, 184 F.3d 1059, 1065 (9th Cir. 1999) (stating the factors that should be considered to determine if a market is efficient).

[6] "A short sale is a sale at a price fixed now for delivery later. A trader sells stock short when he thinks the price of the stock is going to fall, so that when the time for delivery arrives he can buy it at a [hopefully] lower price and pocket the difference." Sullivan & Long, Inc. v. Scattered Corp., 47 F.3d 857, 859 (7th Cir.1995). "A market maker is a 'firm that maintains a firm bid and offer price in a given security by standing ready to buy or sell at publically-quoted prices.'" Pernick Declaration, Ex. A at 10 n.9.

Defendants also argue that common questions do not predominate in plaintiffs' Section 11 claims because most putative class members cannot trace their shares to the May 2007 SPO. Any plaintiff bringing a claim under Section 11, including all putative class members, must show that all stock for which damages are claimed was purchased under the challenged offering documents. See Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1080 (9th Cir. 1999). In this case, all putative class members who purchased shares in the aftermarket[7] would have to show that their shares were actually issued in the SPO.

Tracing shares purchased in the aftermarket to a particular SPO requires a difficult, indeed sometimes impossible, individual showing of proof, particularly where a company has made more than one offering. See Juneja Affidavit; Hertzberg, 191 F.3d at 1080 (noting that tracing shares purchased in the aftermarket to a particular registration statement "might present a problem of proof in a case in which stock was issued under more than one registration statement"). Syntax's SPO came in 2007 when there were already millions of shares of Syntax stock on the market. See Sams Declaration, Ex. A ¶ 30. Plaintiffs have not provided any information regarding how class members can or will trace their aftermarket stock.[8] Individual questions regarding standing to assert a Section 11 claim would, therefore, overwhelm the questions common to the class if all aftermarket purchasers are included.

We will limit plaintiffs' proposed class to exclude Section 11 claims by any person who did not purchase directly in the SPO. Defendants argue that this same limitation should apply to all Section 12(a)(2) claims as well. Plaintiffs do not respond to this argument, and it is clear that Section 12(a)(2) does not provide standing for aftermarket purchasers. See

---

[7] The term "aftermarket" here is used to refer to any shares purchased after May 24, 2007, as well as any shares purchased on that day but not purchased directly from an underwriter or participating dealer.

[8] Plaintiffs' expert, Steinberg, opines that "[i]n seeking to establish the requisite standing under Section 11 in this matter, materials within the possession of Underwriters and participating dealers may be very helpful." Steinberg Affidavit ¶ D. The opinion does not address how these hypothetical documents could show the standing of putative class members to avoid a series of individual mini-trials on these issues.

Hertzberg, 191 F.3d at 1080-81. We, therefore, conclude that the class for plaintiffs' 1933 Act claims must be limited to exclude all purchasers that did not buy their stock on the day of the SPO directly from an underwriter or participating dealer.[9]

#### c. direct purchasers

Defendants also contend that any class that is certified should be limited to exclude direct purchasers of Syntax stock. Specifically, defendants seek to exclude purchasers in two private offerings: (1) a March 28, 2007 transaction in which WesTech Electronics Ltd. and TCV Group, Syntax suppliers, acquired 2.1 million shares for $15.5 million dollars; and (2) an August 23, 2007 transaction with TECO Electronic & Machinery Co., another Syntax supplier, in which it acquired 3.1 million shares for approximately $20 million dollars. Consolidated Amended Complaint ¶¶ 148 & 164. Defendants contend these investors are subject to many individual defenses because they negotiated directly with the company and, in their position as suppliers, may have had unique information about Syntax and the television industry.

We agree that the class should be limited to exclude purchasers in the March 2007 and August 2007 direct transactions. Given their position as suppliers, these purchasers are subject to individual defenses regarding their knowledge of the alleged misstatements and common questions do not, therefore, predominate.[10]

### 2. Superiority of a Class Action

---

[9] We join plaintiffs' Section 15 claim in this analysis because control-person liability is predicated upon Section 11 or Section 12(a)(2) liability. See In re Dynegy, Inc. Sec. Litig., 226 F.R.D. 263, 272 n.8 (S.D. Tex. 2005).

[10] Hodgson also argues that common questions do not predominate because of individual questions regarding the one year statute of limitations for Section 11 and Section 12(a)(2) claims. 15 U.S.C. § 77m. We disagree. It is unlikely that defendants will have many, or any, defenses regarding when a specific individual actually discovered the facts of their claim, and a determination of when plaintiffs should have discovered a claim can easily be done on a class-wide basis.

1    Under Rule 23, to determine whether a class action is superior to other methods of
adjudicating this controversy we should consider (1) individual class members' interests in
controlling or prosecuting separate actions, (2) other litigation concerning this controversy
by or against class members, (3) the desirability of concentrating the litigation in this forum,
and (4) the manageability of the action. Apart from the several arguments already addressed,
the parties do not dispute that consideration of these factors weighs in favor of finding a class
action superior to other methods of resolving this conflict. Particularly considering the large
number of potential claims, a class action is superior to other methods because it allows these
issues to be resolved in a single action. Moreover, this is an appropriate forum because
Syntax has its principal place of business in Tempe, Arizona. See Consolidated Amended
Complaint ¶ 20.

Accordingly, we conclude that plaintiffs have shown the requirements for class
certification under Rule 23(a) and (b)(3). We will certify a class for this action with the
limitations previously discussed.

### C. Conditions on Class Certification

Finally, defendants move to include a required proof of claim form with the class
notice to provide for a more credible and accurate damages analysis. Plaintiffs oppose
inclusion of the proof of claim form and argue that defendants are attempting to impose an
impermissible "opt-in" procedure on class members. We agree.

Defendants' proposed proof of claim form states that "[t]o recover as a Member of the
Class based on your claims . . . you must complete and . . . sign this Proof of Claim. If you
fail to file a properly addressed . . . Proof of Claim, your claim may be rejected and you may
be precluded from any recovery from the Litigation." Underwriters' Response, Ex. B ¶ 1.
A class member reading the first paragraph could therefore assume that if he does not submit
the proof of claim form he will be excluded from the class and be free to bring his own
action. Although the form later provides that a class member will be bound by any final
judgment whether or not he submits a proof of claim, Id. ¶ 4., by conflating recovery with
class membership, this form has a strong potential to confuse class members regarding

1 whether or not they need to "opt-in" to this action. To the extent that failure to complete and
2 return the proof of claim form would result in the class member's dismissal, it constitutes an
3 "opt-in" procedure, which contradicts Rule 23. See Fed. R. Civ. P. 23(c)(2)(B); <u>McCarthy</u>
4 <u>v. Paine Webber Group, Inc.</u>, 164 F.R.D. 309, 313 (D. Conn. 1995).

We, therefore, deny defendants' motion to include a proof of claim form with class notice.

## IV

Accordingly, **IT IS ORDERED GRANTING** plaintiffs' amended motion for class certification (doc. 196). Pursuant to Rule 23(b)(3) we certify a class consisting of:

> All persons or entities who purchased or otherwise acquired Syntax-Brillian Corporation securities between February 9, 2007 and November 14, 2007. For all claims brought under the Securities Act of 1933, as opposed to claims under the Securities Exchange Act of 1934, only those persons or entities who purchased or otherwise acquired Syntax-Brillian securities in the company's secondary public offering on May 24, 2007 directly from an underwriter or participating dealer are included. Any purchasers in private offerings by Syntax-Brillian corporation on March 28, 2007 and August 23, 2007, all defendants, members of individual defendants' families, any entity in which a defendant has a controlling interest or is a parent or subsidiary of, or is controlled by Syntax-Brillian Corporation, the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of defendants are excluded.

**IT IS FURTHER ORDERED DENYING** Underwriter defendants' motion to strike the affidavit of Marc Steinberg (doc. 279).

**IT IS FURTHER ORDERED** pursuant to Rule 23(c)(2), Fed. R. Civ. P., that the parties shall stipulate to a form of notice to the class and file it no later than August 10, 2009.

DATED this 17th day of July, 2009.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 14 -