Joel P. Hoxie (#005448)
Patricia Lee Refo (#017032)
Joseph G. Adams (#018210)
SNELL & WILMER LLP
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
E-mail: jadams@swlaw.com

Daniel P. Lefler (admitted *pro hac vice*)
Craig I. Varnen (admitted *pro hac vice*)
Shaunt T. Arevian (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
E-mail: dlefler@irell.com

Attorneys for Defendants
Vincent F. Sollitto, Jr., and Wayne Pratt

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teimuraz Tsirekidze, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Syntax-Brillian Corp.; Man Kit (Thomas) Chow; John S. Hodgson; James Ching Hua Li; Vincent F. Sollitto, Jr.; Wayne Pratt; Brean Murray, Carret & Co., LLC; Canaccord Adams Inc.; Grobstein, Horwarth & Company LLP; Merrill Lynch, Pierce, Fenner & Smith Inc.; Robert W. Baird & Co. Inc.; and UBS Securities LLC,<br><br>Defendants.<br><br>And All Consolidated Cases. | No. CV-07-2204-PHX-FJM (Lead) (Consolidated)<br><br>**DEFENDANTS SOLLITTO AND PRATT'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT............................................................................................................2

    A. The Alleged Misrepresentations In Syntax's Offering Documents Did Not Cause Plaintiffs' Loss .......................................................2

        1. Plaintiffs Offer No Facts To Dispute That The Supposedly "Corrective" Disclosures Were Unrelated To Plaintiffs' Theory of Wrongdoing .................................................2

        2. Plaintiffs' Token Response To The Arguments Raised In The Motion Are Misplaced...................................................................3

            a. The Opposition Mischaracterizes The Straightforward Arguments Contained In The Motion ................................................................................................3

            b. The Opposition Improperly Relies On A Fundamentally Flawed Damages Report ..............................5

    B. Sollitto And Pratt Are Also Entitled To Summary Judgment On Plaintiffs' Control Person Claim ..................................................................7

III. CONCLUSION .......................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Berson v. Applied Signal Tech.*,
   527 F.3d 982 (9th Cir. 2008) ................................................................................ 5

*In re Daou Systems, Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ..................................................................... 3, 4, 5

*In re Downey Sec. Litig.*,
   Case No. CV 08-3261, 2009 WL 736802  (C.D. Cal. March 18, 2009) ................. 4

*In re Oracle Corp. Sec. Litig.*,
   Case No. C 01-00988, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ................... 5

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) ............................................................ 7

*In re VeriSign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................. 7

*In re Williams Securities litigation-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) .............................................................................. 6

*Metzler Inv. GMBH  v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................... 3, 4

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
   Case No. CV 06-6863, 2008 U.S. Dist. LEXIS 68419 (C.D. Cal. July
   10, 2008) ................................................................................................................ 7

*Police and Fire Retirement System of City of Detroit v. Safenet, Inc.*,
   Case No. 06-CV-5797, 2009 WL 2391849 (S.D.N.Y. Aug. 5, 2009) ..................... 7

**Federal Statutes**

Fed. R. Civ. P. 56 ............................................................................................................ 8

## I. **INTRODUCTION**

Plaintiffs' Opposition to Sollitto and Pratt's Motion for Summary Judgment (the "Opposition") offers nothing to contest the undisputed facts that the price declines alleged as damages did not result from disclosure of the alleged May 2007 misrepresentations, leaving plaintiffs' claims devoid of loss causation and thus subject to summary judgment.

The Opposition acknowledges that plaintiffs' liability theory is that the May 2007 Offering Documents misrepresented the strength of demand in China and concealed this supposed weakness through allegedly improper accounting with respect to "tooling deposits" and credits from Kolin and revenues for sales to SCHOT. Plaintiffs' further acknowledge that their claimed damages are based solely on declines in Syntax's stock price following the Company's disclosures on September 12 and November 14, 2007. Yet the Opposition offers no facts to dispute that these disclosures revealed no new information relating to the alleged misrepresentations. To the contrary, far from disclosing weakening demand in China, the Company's September 12 disclosures reiterated that "[d]emand for Olevia in China is extremely high" and that Syntax was "modeling to grow at just under 100%" in China over the next quarter. The September 12 disclosures made no mention of any accounting issues relating to Syntax's tooling deposits or credits from Kolin or its sales to SCHOT. Similarly, the November 14 disclosure did not report weakening Chinese demand, nor did it disclose new facts about the supposed accounting issues relating to Kolin and SCHOT. Thus, the stock price declines following these disclosures were not caused by the alleged May 2007 misrepresentations upon which plaintiffs' liability theory is based.

Instead of addressing the lack of any causal connection between the alleged May 2007 misrepresentations and plaintiffs' claimed losses, the Opposition focuses on irrelevant "evidence" which has absolutely no bearing on the issues raised in the Motion. Dispositively, none of plaintiffs' evidence contests the undisputed facts that the September 12 and November 14 disclosures revealed no new information regarding the supposed misrepresentations. And when plaintiffs belatedly attempt to address the Motion's

arguments in the last few pages of the Opposition, they manage only a token response also offering no facts to dispute the fundamental lack of loss causation here.

As there is no genuine dispute that plaintiffs' claimed losses could not have been caused by the alleged May 2007 misrepresentations, Sollitto and Pratt are entitled to summary judgment on the remaining claims asserted against them.

## II. ARGUMENT

### A. The Alleged Misrepresentations In Syntax's Offering Documents Did Not Cause Plaintiffs' Loss

#### 1. Plaintiffs Offer No Facts To Dispute That The Supposedly "Corrective" Disclosures Were Unrelated To Plaintiffs' Theory of Wrongdoing

As demonstrated in the Motion, the September 12 and November 14 disclosures revealed no new information regarding plaintiffs' theory of weakening Chinese demand or the alleged accounting issues relating to SCHOT or Kolin. (Motion at 11-14.) Significantly, the Opposition does not challenge the undisputed facts that these disclosures did not reveal any of the alleged May 2007 misrepresentations. Instead, plaintiffs attempt to divert the Court's attention by packing their Opposition with evidence wholly unrelated to the issue of loss causation. (Opp. at 2-9.) Plaintiffs' argument fails.

The Opposition includes page after page of discussion of evidence that is irrelevant to loss causation. (*Id*.) Plaintiffs cite to documents and other evidence which they claim "illustrate defendants' wrongdoing." (*Id*.) But far from raising a genuine issue of fact, none of the evidence cited addresses the Motion's straightforward argument that the disclosures on September 12 and November 14 were not related to the alleged misrepresentations. Thus, any price declines associated with these disclosures could not have been caused by defendants' alleged wrongdoing. Tellingly, the Opposition avoids any discussion at all of the substance of these supposedly "corrective" disclosures.

Plaintiffs' failure to contest the lack of any causal connection between the alleged misrepresentations and plaintiffs' claimed losses is not surprising. As plaintiffs themselves

concede in their Complaint, far from disclosing weakening demand in China, the September 12 disclosures reiterated that "[d]emand for Olevia in China is extremely high" and that the Company was "modeling to grow at just under 100%" in China over the next quarter. (Cmplt. ¶ 171.) Similarly, the Company's November 14 disclosure made no mention of any weakening in Chinese demand for Syntax's products. (Motion at 14.) And nothing in the September 12 or November 14 disclosures offered any new information about the alleged accounting schemes supposedly used to conceal the alleged weaker-than-reported Chinese demand. (Motion at 11-14.) As the Ninth Circuit has held, where as here the disclosures which plaintiffs allege caused the stock price declines do not correct the alleged misrepresentations, those misrepresentations could not have caused plaintiffs' loss. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1063 (9th Cir. 2008) (explaining loss causation requires that "the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses"); *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (holding loss causation requires "a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff").

### 2. **Plaintiffs' Token Response To The Arguments Raised In The Motion Are Misplaced**

When plaintiffs finally attempt to address the Motion, they offer only a half-hearted response which mischaracterizes the Motion's straightforward arguments and refers to a purported damages report that is devoid of any factual support. These scatter-shot arguments, however, do nothing to change the fact that plaintiffs' purported losses were not caused by the alleged May 2007 disclosure errors.

#### a. **The Opposition Mischaracterizes The Straightforward Arguments Contained In The Motion**

The Opposition unfairly characterizes the Motion's loss causation argument as requiring the disclosures to include a "fact-for-fact disclosure of wrongdoing." (Opp. at 12-14.) This is simply wrong. The Motion's straightforward argument is that the

September 12 and November 14 disclosures were <u>unrelated</u> to the alleged May 2007 misrepresentations. (Motion at 11-14.)  In other words, far from not including any fact-for-fact admissions of wrongdoing, the Motion demonstrated that these disclosures revealed no new information at all about the claimed misrepresentations.  As a matter of law, this negates any causal connection between the alleged misrepresentations and plaintiffs' claimed losses.  *See, Metzler,* 540 F.3d at 1063; *Daou Sys.,* 411 F.3d at 1025.

In the face of this authority, the Opposition appears to contend that because the September 12 disclosures revised the Company's revenue guidance, the market was somehow apprised of the alleged May 2007 misrepresentations. (*See* Opp. at 15-16.)  But the Ninth Circuit has explicitly rejected this argument, recently holding in *Metzler* that loss causation requires that the "market learned of and reacted to th[e] fraud, as opposed to merely reacting to reports of defendant's poor financial health generally." *Metzler,* 540 F.3d at 1063.  There, the Court rejected a virtually identical loss causation argument premised on two disclosures which revealed an investigation by the Department of Education and lowered the company's financial projections. *Id.* at 1063-64.  As here, these disclosures did not "disclose[] – or even suggest[] – to the market that Corinthian was manipulating student enrollment figures company-wide in order to procure excess federal funding, which is the fraudulent activity that Metzler contends forced down the stock that caused its losses." *Id.* at 1063.  The Court reasoned that to allow the case "to proceed on such a theory would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price." *Id.* at 1064 (noting the perverse result that, under plaintiffs' theory, "[s]o long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud.")

Unable to distinguish *Metzler*, plaintiffs erroneously contend in a footnote that it represents a "deviation from the loss causation standards." (Opp. at 14, n. 8.)  But plaintiffs offer no citation in support of this bald assertion.  Nor could they, as courts in the Ninth Circuit have consistently embraced its holding and reasoning. *See, e.g., In re*

*Downey Sec. Litig.*, Case No. 08-CV-3261, 2009 WL 736802, *15 (C.D. Cal. Mar. 18, 2009) (following *Metzler* in dismissing case for lack of loss causation where the disclosures at issue "do not contain a disclosure of wrongdoing, and, at best, demonstrate only that the market learned of and reacted to Downey's 'poor financial health' rather than any alleged fraud"); *In re Oracle Corp. Sec. Litig.*, Case No. 01-CV-00988, 2009 WL 1709050, at *16 (N.D. Cal. June 19, 2009) (relying heavily on *Metzler* in finding no loss causation where the purportedly corrective disclosures only announced lower earnings).

Indeed, the cases cited in the Opposition – *Gilead*, *Daou* and *Berson* – further refute plaintiffs' contention that mere announcements of poor financial health in and of themselves can constitute corrective disclosures. (Opp. at 12-14.) Contrary to plaintiffs' characterization, as a court in this circuit has very recently explained, "[t]he Ninth Circuit's decisions in *Gilead* and *Daou* confirm that loss causation requires more than a company's announcement of a missed financial projection." *Oracle Corp.*, 2009 WL 1709050 at *16. Similarly unavailing is the Opposition's citation to *Berson*. There, plaintiffs claimed they were misled by the company's backlog reports which set a "dollar value o[n] the work it has contracted to do but hasn't yet performed." *Berson v. Applied Signal Tech.*, 527 F.3d 982, 984 (9th Cir. 2008). Plaintiffs claimed the backlog reports failed to disclose that a portion of the orders were from customers that could issue "stop work orders" at any time for any reason. *Id*. And in *Berson*, unlike here, in alleging loss causation plaintiffs pointed to company disclosures which announced reduced revenue <u>and</u> that it had received stop work orders on certain of its contracts – informing the market of the precise misrepresentation alleged. *Id*. at 989-990.

      **b.**   **<u>The Opposition Improperly Relies On A Fundamentally Flawed Damages Report</u>**

The Opposition's reference to a fundamentally flawed damages report and footnote argument regarding management resignations does nothing to rebut the undisputed facts that the September 12 and November 14 disclosures revealed no new information regarding the alleged May 2007 misrepresentations.

The Opposition's reliance on the damages report of Steven Feinstein is misguided. Feinstein's conclusions are nothing more than mere speculation and lack any factual support. Feinstein makes no attempt to draw any connection between what was disclosed on September 12 and November 14 and the alleged May 2007 misrepresentations. (*See* Declaration of Steven Feinstein ("Feinstein Decl.").) Significantly, his report includes no evidence that these disclosures informed the market of new facts relating to the alleged weakening Chinese demand or the supposed accounting issues relating to SCHOT and Kolin. (*Id*.)

The Opposition relies heavily on Feinstein's bare conclusion that "the price of Syntax-Brillian stock was artificially inflated by at least $2.43 per share during the Class Period on account of the alleged misrepresentations." (Opp. at 15.) But far from establishing loss causation, Feinstein's inflation analysis only serves to demonstrate his report's fundamental failures. Significantly, Feinstein makes no effort to analyze the information which became available during the class period and assess any resulting stock price impact. (*See* Feinstein Decl., Ex. A at ¶¶ 95-105.) Instead, he works backwards, assuming that the purportedly corrective disclosures had to have revealed the alleged truth. (*Id*. at ¶ 98.) Feinstein then comes up with his inflation figure by mechanically subtracting Syntax's stock price the day after the purportedly corrective disclosures from the stock price at the beginning of the class period. (*Id*. at ¶¶ 99-105.) Not only is this bootstrapped inflation analysis devoid of any factual basis, it has been squarely rejected by courts that have considered it. *See, e.g., In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009) (holding a similar damages analysis bootstrapping from an end point with a lowered stock price "fails [] to identify any causal link between the revelation of the truth and the decline in price ").

Similarly unavailing is the Opposition's contention that the management departures announced in the September 12 and November 14 disclosures are somehow relevant to loss causation. (Opp. at 16, n. 10.) Plaintiffs ignore well-established case law which holds that where, as here, the announcements provide no indication that the departures were in

1  any way related to the alleged wrongdoing, they could not have "corrected" the alleged
2  misrepresentations. *See, e.g., In re VeriSign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173,
3  1208 (N.D. Cal. 2007) (holding "[t]he announcement of the resignations of [defendants] is
4  meaningless for purposes of showing loss causation" because, *inter alia*, "there is no
5  indication [] that [the company] announced that [defendants] had resigned because they
6  were involved in [the alleged wrongdoing]."); *Police & Fire Ret. Sys. of Detroit v. Safenet,
7  Inc.*, Case No. 06-CV-5797, 2009 WL 2391849 at *12 (S.D.N.Y. Aug. 5, 2009) (holding
8  disclosure of CFO's departure and lower guidance "would not alert investors to any
9  improprieties so as to allege loss causation").

10  Apparently unable to find any authority to support their argument that resignations
11  alone can establish loss causation, plaintiffs inexplicably cite two cases – *Middlesex* and
12  *Scottish Re Group* – which considered whether management departures were relevant to
13  the question of scienter. *Middlesex Ret. Sys. v. Quest Software, Inc.*, Case No. 06-CV-
14  6863, 2008 U.S. Dist. LEXIS 68419, at *23-25 (C.D. Cal. July 10, 2008); *In re Scottish Re
15  Group Sec. Litig.*, 524 F. Supp. 2d 370, 394, n. 176 (S.D.N.Y. 2007). Significantly,
16  neither case considered the relevance of these announcements to loss causation, and
17  certainly did not disturb the well established precedent that the mere announcement of an
18  individual's departure is irrelevant to the question of loss causation. *Id*.

19  **B.    Sollitto And Pratt Are Also Entitled To Summary Judgment On
20          Plaintiffs' Control Person Claim**

21  As demonstrated in the Motion, plaintiffs' control person claim under Section 15 of
22  the Securities Act fails because plaintiffs' alleged primary violations fail. (Motion at 15.)
23  Plaintiffs do not dispute that their control person claim cannot succeed if their primary
24  violations fails, but argue that their claimed primary violations should survive. (Opp. at
25  16.) For the reasons discussed herein and in the Motion, plaintiffs are wrong.
26  Accordingly, Sollitto and Pratt are also entitled to summary judgment on plaintiffs'
27  Section 15 claim.
28

## III. CONCLUSION

For all of the foregoing reasons and the reasons set forth in the Motion, defendants Sollitto and Pratt respectfully request that the Court grant summary judgment as to all remaining claims asserted against them pursuant to Rule 56 of the Federal Rules of Civil Procedure.

DATED this 26th day of October, 2009.

                SNELL & WILMER L.L.P.

                By: s/ Joseph G. Adams
                   Joel P. Hoxie
                   Patricia Lee Refo
                   Joseph G. Adams
                   One Arizona Center
                   400 E. Van Buren
                   Phoenix, AZ  85004-2202

                -and-

                Daniel P. Lefler
                Craig I. Varnen
                Shaunt T. Arevian
                IRELL & MANELLA L.L.P.
                1800 Ave of the Stars, Suite 900
                Los Angeles, CA 90067

                Attorneys for Defendants
                Vincent F. Sollitto, Jr. and Wayne Pratt

## **CERTIFICATE OF MAILING**

I hereby certify that on October 26, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

By   s/ Joseph G. Adams

10667349.1