BUCKLEY KING
MICHAEL SALCIDO
2020 North Central Avenue, Suite 1120
Phoenix, AZ 85004
Telephone: 602/424-2550
602/424-2566 (fax)
salcido@buckleyking.com

Liaison Counsel

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
G. PAUL HOWES
DANIEL S. DROSMAN
JEFFREY D. LIGHT
SCOTT H. SAHAM
DEBRA J. WYMAN
SAMANTHA A. SMITH
SHANNON M. MATERA
JENNIFER Y. LAI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
paulh@csgrr.com
dand@csgrr.com
jeffl@csgrr.com
scotts@csgrr.com
debraw@csgrr.com
ssmith@csgrr.com
smatera@csgrr.com
jlai@csgrr.com

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
EX KANO S. SAMS II
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)
exkanos@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TEIMURAZ TSIREKIDZE, On Behalf of Himself and All Others Similarly Situated, ) ) | No. 2:07-cv-02204-FJM **(Consolidated)** |
| Plaintiff, ) | CLASS ACTION |
| vs. ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| SYNTAX-BRILLIAN CORP., et al., ) ) | |
| Defendants. ) | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   HISTORY OF THE LITIGATION .........................................................2

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL ...........................................................................................4

IV.   THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .................9

V.    SCHEDULE OF EVENTS ...................................................................10

VI.   CONCLUSION.....................................................................................11

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5
*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ............................................................................ 8

6
*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980),
7
    *aff'd,* 661 F.2d 939 (9th Cir. 1981) ................................................................ 5

8
*In re Apollo Group, Inc. Sec. Litig.,*
    No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
9
    (D. Ariz. Aug. 4, 2008) ..................................................................................... 7

10
*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
11
    (N.D. Cal. Sept. 6, 1991) ................................................................................. 8

12
*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    No. MDL 901, 1992 U.S. Dist. LEXIS 14337
13
    (C.D. Cal. June 10, 1992) ................................................................................. 6

14
*In re JDS Uniphase Corp. Sec. Litig.,*
    Civ. No. C-02-1486 CW, 2007 WL 4788556
15
    (N.D. Cal. Nov. 27, 2007) ................................................................................. 8

16
*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class*
17
    *Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992) ...................................... 6

18
*Linney v. Cellular Alaska P'ship,*
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997),
19
    *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ............................................................... 5

20
*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987) ................................................................... 5

21

22
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 6

23
*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ........................................................................ 4, 8

24

25
*Robbins v. Koger Props.,*
    116 F.3d 1441 (11th Cir. 1997) ........................................................................ 8

26
*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ............................................................................ 11

27

28

**Page**

*Util. Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989) ...................................................................4


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) ..................................................................................3
§77k ......................................................................................3
§77k(e) ..................................................................................7
§77l(a)(2) ..............................................................................3
§78o ......................................................................................3
§78t(a) ...................................................................................3
§78u-4(a)(7) ..........................................................................9

Federal Rule of Civil Procedure
Rule 23(b)(3) .........................................................................9
Rule 23(c)(2) .........................................................................9
Rule 23(c)(2)(B) ....................................................................9
Rule 23(e) ..........................................................................4, 9
Rule 23(e)(1) .........................................................................9


**SECONDARY AUTHORITIES**

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2002)
¶23.85[3] ...............................................................................9

*Manual for Complex Litigation* (4th ed. 2004)
§13.14 ....................................................................................4

## I.   INTRODUCTION

The parties have reached an agreement to settle this Litigation on the terms set forth in the Stipulation of Settlement dated as of October 28, 2009 ("Stipulation"),[1] which is being filed concurrently herewith. The settlement provides for the payment of $10,000,000 in cash to resolve all of the Class's claims against all Defendants.[2]  Lead Counsel believe that the settlement represents a highly favorable resolution of a case of substantial complexity and is in the best interest of the Class.[3]

This case was carefully investigated and has been vigorously litigated from start to finish. At every stage of the Litigation, Defendants have asserted aggressive defenses and expressed their belief that Plaintiffs could not prevail on the claims asserted. The settlement was achieved after extensive litigation and months before the scheduled trial date. Plaintiffs now ask this Court to enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order") that: (a) grants preliminary approval of the proposed settlement; (b) approves the parties' proposed form and method for giving notice of the pendency of this Litigation and the settlement to the Class; (c) directs that the notice be given to Class Members as approved by the Court; and (d) schedules a hearing at which the Court considers: (i) the parties' request for final approval of the settlement and entry of the

---

[1]   All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation.

[2]   Of the $10 million, the Individual Defendants shall pay $4.75 million, the Underwriter Defendants shall pay $2.75 million and Grobstein shall pay $2.5 million.

[3]   The settlement is on behalf of the Class that the Court certified pursuant to its July 17, 2009 Order, defined as: all Persons or entities who purchased or otherwise acquired Syntax Securities between February 9, 2007 and November 14, 2007. For all claims brought under the Securities Act of 1933, as opposed to claims under the Securities Exchange Act of 1934, only those persons or entities who purchased or otherwise acquired Syntax Securities in the Company's secondary public offering on May 24, 2007 directly from an underwriter or participating dealer are included. Any purchasers in private offerings by Syntax on March 28, 2007 and August 23, 2007, all Defendants, members of Individual Defendants' families, any entity in which a Defendant has a controlling interest or is a parent or subsidiary of, or is controlled by Syntax, the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants are excluded. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class.

1  [Proposed] Final Judgment and Order of Dismissal with Prejudice; (ii) the Plan of Allocation

2  of settlement proceeds; and (iii) Lead Counsel's request for an award of attorneys' fees and

3  expenses.  In determining whether preliminary approval is warranted, the issue before the

4  Court is whether the proposed settlement is within a range of what might be found to be fair,

5  reasonable, and adequate, such that notice of the proposed settlement should be provided to

6  Class Members and that a hearing be scheduled for final settlement approval.

7  **II.   HISTORY OF THE LITIGATION**

8          Beginning on November 14, 2007, a number of class action lawsuits were filed

9  against Syntax-Brillian Corporation ("Syntax" or the "Company") and certain of its officers

10  by Syntax stockholders alleging violations of the federal securities laws.  The cases were

11  consolidated before the Honorable Frederick J. Martone in the United States District Court

12  for the District of Arizona, and the case is presently styled *Tsirekidze v. Syntax-Brillian*

13  *Corp., et al.*, No. 2:07-cv-02204-FJM (the "Litigation").  On April 7, 2008, the Court

14  appointed the City of St. Clair Shores Police & Fire Retirement System as "lead plaintiff"

15  pursuant to the requirements of the Private Securities Litigation Reform Act of 1995.  On

16  July 8, 2008, Syntax filed for bankruptcy in the United States Bankruptcy Court for the

17  District of Delaware ("Bankruptcy Court"), pursuant to Chapter 11 of the Bankruptcy Code.

18          On August 25, 2008, lead plaintiff filed a Consolidated Class Action Complaint for

19  Violations of the Federal Securities Laws ("Complaint") and added claims against Grobstein,

20  the Company's auditor, and the underwriters for the Company's secondary public offering

21  on May 24, 2007.  The Complaint added City of New Haven Policemen and Firemen's

22  Pension Fund as a named plaintiff.[4]  On October 15, 2008, separate motions to dismiss the

23  Complaint were filed by the following defendants:  James Ching Hua Li and Man Kit

24  (Thomas) Chow; Vincent F. Sollitto, Jr. and Wayne A. Pratt; John S. Hodgson; the

25  Underwriter Defendants; and Grobstein.  On February 4, 2009, the Court issued an Order

26

27  [4]      As a result of Syntax's bankruptcy filing, Syntax was not named as a defendant in the
Complaint and the Class's claim against Syntax in its bankruptcy proceeding has no value.

28

1  granting in part and denying in part defendants' motions to dismiss the Complaint. The

2  Court upheld Plaintiffs' §§11, 12(a)(2), and 15 claims under the Securities Act of 1933

3  against all defendants for the alleged false and misleading statements associated with the

4  Company's May 24, 2007 secondary public offering (with the exception of the §12(a)(2)

5  claim against the Company's former auditor, Grobstein). The Court also upheld Plaintiffs'

6  §§10(b) and 20(a) claims against defendants James Ching Hua Li and Man Kit (Thomas)

7  Chow.

8         On July 17, 2009, the Court issued an order appointing Plaintiffs as class

9  representatives and certifying a Class that consists of:

10        All persons or entities who purchased or otherwise acquired Syntax-Brillian

11        Corporation securities between February 9, 2007 and November 14, 2007. For

12        all claims brought under the Securities Act of 1933, as opposed to claims

13        under the Securities Exchange Act of 1934, only those persons or entities who

14        purchased or otherwise acquired Syntax-Brillian securities in the [C]ompany's

15        secondary public offering on May 24, 2007 directly from an underwriter or

16        participating dealer are included. Any purchasers in private offerings by

17        Syntax-Brillian [C]orporation on March 28, 2007 and August 23, 2007, all

18        defendants, members of individual defendants' families, any entity in which a

19        defendant has a controlling interest or is a parent or subsidiary of, or is

20        controlled by Syntax-Brillian Corporation, the officers, directors, employees,

21        affiliates, legal representatives, heirs, predecessors, successors, and assigns of

22        defendants are excluded.

23        Defendants have filed answers denying all material allegations of the Complaint and

24  have asserted numerous defenses in the case. The parties are currently engaged in discovery,

25  which includes, without limitation, the review and analysis of hundreds of thousands of

26  pages of documents, the taking of depositions, and expert discovery. Additionally, certain

27  defendants have filed motions for summary judgment.

28

After extensive settlement discussions, the parties have reached agreement on the terms of settlement as set forth in the Stipulation.

### III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed settlement and will be asked to make a determination as to whether the settlement is fair, reasonable, and adequate, under all of the circumstances. At this juncture, however, Plaintiffs request only that the Court grant preliminary approval of the settlement.

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the proposed settlement should be given to Class Members and a hearing scheduled to consider final settlement approval. *See Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

Plaintiffs are now requesting the Court to take the first step in this process and grant preliminary approval of the proposed settlement. The settlement clearly satisfies the standard for preliminary approval. The settlement which was extensively negotiated provides a cash benefit to the Class in the amount of $10 million, for distribution to eligible Class Members after the payment of settlement administration costs, Court-approved attorneys' fees and expenses, and taxes. The settlement negotiations with the Individual Defendants included two mediation sessions with Judge Daniel Weinstein (Ret.) and were

complicated by Syntax's bankruptcy as well as disputes over the amount of available insurance. In addition, there were four other cases pending unrelated to this Litigation that were seeking to obtain recovery under the same insurance proceeds. Settlement negotiations with Grobstein included a mediation with Judge Edward A. Infante (Ret.). These negotiations were similarly complicated by disputes over the amount of available insurance, as well as another pending action unrelated to this Litigation. Finally, Plaintiffs engaged in separate settlement negotiations with the Underwriter Defendants. Plaintiffs and their counsel believe that the settlement is not only within the range of what might be found to be fair, reasonable, and adequate but is a very good resolution of this Litigation under the circumstances and warrants not only the Court's preliminary approval but also final approval after notice to the Class. Indeed, the settlement enjoys a presumption that it is fair and reasonable, because it is the product of extensive arm's-length negotiations conducted by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective client's positions.[5]

Reference to factors considered by courts in granting final approval of class action settlements lend support to the proposition that the settlement is well within the range of possible approval. First, as discussed above, the terms of the proposed settlement are the product of extensive arm's-length negotiations between the parties. The negotiations were at all times hard-fought and at arm's length. During these negotiations, Lead Counsel zealously advanced Plaintiffs' positions and were fully prepared to continue to litigate (and in fact did) rather than accept a settlement that was not in the best interest of the Class. Plaintiffs through their counsel, having carefully considered and evaluated, *inter alia*, the

---

[5]    *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create[s] a presumption that the agreement is fair"); *see also M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

1   relevant legal authorities and evidence adduced to date to support the claims asserted, the

2   likelihood of prevailing on these claims, the risk, expense, and duration of continued

3   litigation, the likely appeals and subsequent proceedings necessary if Plaintiffs did prevail

4   against Defendants at trial, and the likelihood of collecting on any significant judgment after

5   trial have concluded that the settlement is clearly fair, reasonable, and adequate and in the

6   best interest of the Class.  Lead Counsel have significant experience in securities and other

7   complex class action litigation and have negotiated numerous other substantial class action

8   settlements throughout the country.  It is well established that significant weight should be

9   attributed to the belief of experienced counsel that settlement is in the best interest of the

10   class. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.

11   2004) ("Great weight is accorded to the recommendation of counsel, who are most closely

12   acquainted with the facts of the underlying litigation.").[6]

13         Although Plaintiffs and their counsel believe that the Class's claims have substantial

14   merit, they recognize the significant risk and expense necessary to prosecute Plaintiffs'

15   claims against Defendants through summary judgment, trial, and subsequent appeals, as well

16   as the inherent difficulties and delays complex litigation like this entails.   Assuming

17   Plaintiffs survived Defendants' summary judgment motions, there was a real risk that a jury

18   would not understand the complex factual and legal issues at issue in this Litigation.  For

19   example, to prove Plaintiffs' fraud claims, Plaintiffs would have to prove, among other

20   things, that Defendants were responsible for material misstatements or omissions of fact, that

21   Defendants acted with the requisite scienter, that Defendants' fraud caused the losses

22   claimed by the Class, and that the Class suffered actual damages as a result of Defendants'

23   conduct.  To prove Plaintiffs' claims related to the Company's secondary offering, Plaintiffs

24

25   [6]    *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901,
        1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel
26      that the proposed settlement represented the most beneficial result for the class a compelling
        factor in approving settlement); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp.
27      1379, 1392 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th
        Cir. 1992).

28

1  would have to prove that the offering documents contained material misstatements or
2  omissions and that Defendants failed to conduct a reasonable investigation related to the
3  statements made in connection with the Company's May 24, 2007 secondary public
4  offering.[7]  Many of the issues related to liability would have been the subject of expert
5  testimony.  There is no telling how the jury would react to the competing testimony.

6       Even if Plaintiffs were able to establish liability, the determination of damages, like
7  the determination of liability, is a complicated and uncertain process, involving conflicting
8  expert options.  Defendants have retained damage experts who would testify that the Class
9  did not suffer any damages because the declines in Syntax's stock price, which Plaintiffs rely
10 on to establish loss causation, were unrelated to Plaintiffs' allegations.[8]  While Plaintiffs
11 disagree with Defendants' experts and would proffer expert(s) who would opine that the
12 Class suffered significant damages, the issues surrounding loss causation and damages would
13 result in a "battle of the experts."  The reaction of a jury to such complex and contradictory
14 expert testimony is highly unpredictable, and in such a battle, Lead Counsel recognize the
15 possibility that a jury could be swayed by convincing experts for the Defendants, and find
16 there were no damages or only a fraction of the amount of damages contended.  The
17 difficulty of proving loss causation was recently highlighted in *In re Apollo Group, Inc. Sec.*
18 *Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008).
19 While currently on appeal, in *Apollo*, the court on a motion for judgment as a matter of law,

---

[7]      Under §11(e) of the Securities Act of 1933, Defendants are also entitled to a loss causation defense.

[8]      For example, one of the Individual Defendants' expert opines that: "In an efficient market, a company's stock price cannot react to news that is not known.  Syntax-Brillian's stock price decline associated with the two alleged corrective disclosure days, September 12, 2007 and November 14, 2007, could not have been caused by the market learning the alleged truth because the market did not learn the alleged truth, namely, the alleged lack of demand, alleged insufficient working capital caused by a lack of demand, or the alleged improper accounting for SCHOT-related revenue or Kolin-related tooling deposits.  Thus, economic losses suffered by plaintiffs were not caused by the market learning the alleged truth." *See* Expert Report of Andrew H. Roper, Ph.D. at ¶4, which was previously filed with the Court.

1  overturned a jury verdict of $277 million in favor of shareholders based on insufficient
2  evidence presented at trial to establish loss causation.

3      While Plaintiffs believe that they would present sufficient evidence to establish the
4  Class's claims, Plaintiffs and their counsel are aware that Defendants would present counter
5  evidence and other substantial obstacles to obtaining a favorable judgment after trial.  The
6  proposed settlement provides a very good recovery for the Class while eliminating the risk,
7  expense, delay, and uncertainty of continued litigation.[9]  Even if Plaintiffs were successful at
8  trial, there is no guarantee that the judgment would ultimately be sustained on appeal or by
9  the trial court.  An evaluation of the benefits of settlement must also be tempered by a
10 recognition that any compromise involves concessions on the part of all of the settling
11 parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes
12 and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citation
13 omitted).  As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977):

14         The trial court should not make a proponent of a proposed settlement "justify
           each term of settlement against a hypothetical or speculative measure of what
15         concessions might have been gained . . . ."

16 *Id.* at 1330 (citation omitted).

17     In short, while Plaintiffs and Lead Counsel believe that the claims asserted have
18 substantial merit, if the Litigation continued, Plaintiffs and the Class would bear the risks of
19 establishing liability and damages that would have been vigorously challenged by
20 Defendants. Absent settlement, this contest would have ultimately developed into a battle of
21 competing facts and inferences, competing experts, and a credibility toss-up to be decided by
22

23 [9]     Even if Plaintiffs prevailed through summary judgment, risks to the Class remain.
24 Even a meritorious case can be lost at trial. *See In re JDS Uniphase Corp. Sec. Litig.*, Civ.
   No. C-02-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury
25 returned a verdict against plaintiffs and the action was dismissed). Further, a successful jury
   verdict does not eliminate the risk to the class. *See In re Apple Computer Sec. Litig.*, No. C-
26 84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered
   judgment notwithstanding the verdict for the individual defendants and ordered a new trial
27 with respect to the corporation); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997)
   (reversing $81 million jury verdict for securities fraud).
28

1  the jury.  By contrast, the $10 million settlement is immediately realizable by the Class and
2  eliminates all of the risks of continued litigation.

3      While Plaintiffs believe that the settlement merits final approval, the Court need not
4  make that determination at this time.  The Court is being asked to permit notice of the terms
5  of the settlement to be sent to the Class and schedule a hearing, pursuant to Federal Rule of
6  Civil Procedure 23(e), to consider any expressed views by Class Members of the fairness of
7  the settlement, the Plan of Allocation, and Lead Counsel's request for an award of fees and
8  expenses.  5 James Wm. Moore, *Moore's Federal Practice* ¶23.85[3], at 23-353 to 23-354
9  (3d ed. 2002).

10 **IV.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE**

11     Federal Rule of Civil Procedure 23(c)(2)(B) says, "[f]or any class certified under Rule
12 23(b)(3), the court must direct to class members the best notice that is practicable under the
13 circumstances, including individual notice to all members who can be identified through
14 reasonable effort."   Rule 23(e)(1) similarly says, "[t]he court must direct notice in a
15 reasonable manner to all class members who would be bound by the proposal.

16     Here, the parties have negotiated the Notice of Proposed Settlement of Class Action
17 (the "Notice") to be disseminated to all persons who fall within the definition of the Class
18 and whose names and addresses can be identified from Syntax's transfer records.   In
19 addition, the Claims Administrator sends out letters to entities which commonly hold
20 securities in "street name" as nominees for the benefit of their customers who are the
21 beneficial purchasers of the common stock.  The parties further propose to supplement the
22 mailed Notice with a summary notice (the "Summary Notice"), published in *Investor's*
23 *Business Daily.*  The Notice and Summary Notice are attached to the Stipulation as Exhibits
24 A-1 and A-3.

25     As required by Federal Rule of Civil Procedure 23(c)(2) and the Private Securities
26 Litigation Reform Act of 1995 (15 U.S.C. §78u-4(a)(7)), the  Notice describes the nature of
27 the Litigation; sets forth the definition of the Class; states the Class's claims; discloses the
28 right of Class Members to exclude themselves from the Class, as well as the deadline and

procedure for doing so and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves.  In addition, the Notice describes the settlement and the portion that Plaintiffs propose to distribute among the Class, both in the aggregate and on an average per-share basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages and other issues; sets out the amount of attorneys' fees and expenses that counsel for Plaintiffs intend to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the settlement.  The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the settlement, the Plan of Allocation, or counsel's request for attorneys' fees and expenses and appearing at the hearing.  The contents of the Notice therefore satisfy all applicable requirements.

Lastly, as part of the preliminary approval of the settlement, Plaintiffs also respectfully request the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator.  Gilardi is the same firm that was used to send out Class notice in this Litigation.  As Claims Administrator, Gilardi will be responsible for, among other things, mailing and publishing the notices to the Class, reviewing claims, and compiling a distribution schedule.  Gilardi has extensive experience in settlement administration and will adequately fulfill its duties in this case.  *See* www.gilardi.com.

**V.    SCHEDULE OF EVENTS**

In connection with preliminary approval of the settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for objecting to the settlement, opting out of the Class, and filing papers in support of the settlement.  Plaintiffs propose the following schedule:

| | |
|---|---|
| Notice mailed to Class | 14 days after the Court enters the Notice Order ("Notice Date") |

| Summary Notice published | 14 days after the Court enters the Notice Order |
| Deadline for filing papers in support of the settlement, Plan of Allocation of settlement proceeds, and request for an award of attorneys' fees and expenses | 28 days prior to the final approval hearing |
| Deadline for objecting to the settlement, Plan of Allocation, or attorneys' fees and expenses and for opting out of the Class | 14 days prior to the final approval hearing |
| Deadline for filing reply papers in support of the settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses | 7 days prior to the final approval hearing |
| Final approval hearing | 65 days after the Notice Date, or a date thereafter at the convenience of the Court |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Class Members with respect to their rights concerning the settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the settlement be preliminarily approved by the Court and the Notice Order entered.

DATED: November 3, 2009                     Respectfully submitted,

BUCKLEY KING
MICHAEL SALCIDO
2020 North Central Avenue, Suite 1120
Phoenix, AZ  85004
Telephone:  602/424-2550
602/424-2566 (fax)

Liaison Counsel

1 
2                                       COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
3                                       G. PAUL HOWES
                                        DANIEL S. DROSMAN
4                                       JEFFREY D. LIGHT
                                        SCOTT H. SAHAM
5                                       DEBRA J. WYMAN
                                        SAMANTHA A. SMITH
6                                       SHANNON M. MATERA
                                        JENNIFER Y. LAI
7 
8                                       _____s/Jeffrey D. Light_____
                                                    JEFFREY D. LIGHT
9 
10                                      655 West Broadway, Suite 1900
                                        San Diego, CA  92101
11                                      Telephone:  619/231-1058
                                        619/231-7423 (fax)
12                                      COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
13                                      EX KANO S. SAMS II
                                        9601 Wilshire Blvd., Suite 510
14                                      Los Angeles, CA  90210
                                        Telephone:  310/859-3100
15                                      310/278-2148 (fax)

16                                      Lead Counsel for Plaintiffs

17                                      VANOVERBEKE MICHAUD
                                          & TIMMONY, P.C.
18                                      MICHAEL J. VANOVERBEKE
                                        THOMAS C. MICHAUD
19                                      79 Alfred Street
                                        Detroit, MI  48201
20                                      Telephone:  313/578-1200
                                        313/578-1201 (fax)
21 
22                                      Additional Counsel for Plaintiffs

S:\Settlement\Syntax-Brillian.set\BRF PRELIM APPROVAL 00062667.doc

23 
24 
25 
26 
27 
28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2009, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on November 3, 2009.

s/Jeffrey D. Light
JEFFREY D. LIGHT

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  jeffl@csgrr.com

# Mailing Information for a Case 2:07-cv-02204-FJM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce A Abbott**
  Bruce.Abbott@mto.com,Valentina.Neufeld@mto.com

- **Joseph G Adams**
  jgadams@swlaw.com,mgarsha@swlaw.com,docket@swlaw.com

- **Shaunt T Arevian**
  sarevian@irell.com

- **Jonathan E Behar**
  jbehar@csgrr.com,jbehar@csgrr.com,aromero@csgrr.com

- **James J Belanger**
  jbelanger@csblaw.com,ejames@csblaw.com

- **Maureen Beyers**
  mbeyers@omlaw.com,lsmock@omlaw.com,ecfdc@omlaw.com

- **Avi Braz**
  avi.braz@mto.com

- **Gustavo Fabian Bruckner**
  bruckner@whafh.com

- **H Michael Clyde**
  MClyde@perkinscoie.com,docketphx@perkinscoie.com,lsandoval@perkinscoie.com

- **Sean K Collins**
  scollins@csgrr.com,scollins@csgrr.com,keagen@csgrr.com

- **Efren A Compean**
  ecompean@garrett-tully.com

- **Christopher Robert Cowan**
  ccowan@irell.com

- **Michelle Craven**
  mcraven@gibsondunn.com

- **Jonathan Cobb Dickey**
  jdickey@gibsondunn.com

- **Daniel S Drosman**
  ddrosman@csgrr.com,tholindrake@csgrr.com

- **Douglas H Fitch**
  dfitch@jbhhlaw.com,mterry@jbhhlaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Francis M Gregorek**
  gregorek@whafh.com

- **Susan L Hoffman**
  susan.hoffman@bingham.com,gloria.moonesinghe@bingham.com

- **Joel Philip Hoxie**
  jhoxie@swlaw.com,jkfisher@swlaw.com,docket@swlaw.com

- **Mark P Hummels**
  mhummels@omlaw.com,bwendt@omlaw.com,ecfdc@omlaw.com

- **Jennifer Y Lai**
  jlai@csgrr.com

- **James Raza Lawrence**
  razalawrence@gmail.com

- **Rebecca Justice Lazarus**
  rjustice@gibsondunn.com,rmcbain@gibsondunn.com

- **Daniel P Lefler**
  dlefler@irell.com

- **Frank Lewis**
  franklewis@aol.com

- **Jeffrey D Light**
  jeffl@csgrr.com,jstark@csgrr.com

- **John L Lin**
  jlin@garrett-tully.com

- **Jennifer Lopez**
  jennifer.lopez@bingham.com

- **Robert A Mandel**
  mandelr@gtlaw.com,coles@gtlaw.com

- **Shannon McKenna Matera**
  smatera@csgrr.com,Hkharadjian@csgrr.com,Rduenez@csgrr.com

- **Kevin Michael McGee**
  kmcgee@zsz.com

- **Gregory Mark Nespole**
  nespole@whafh.com

- **John David Pernick**
  john.pernick@bingham.com,frank.downing@bingham.com

- **Patricia Lee Refo**
  prefo@swlaw.com,jaltendorf@swlaw.com,docket@swlaw.com

- **Darren J Robbins**
  darrenr@csgrr.com,E_File_SD@csgrr.com

- **Hart Lawrence Robinovitch**
  hlr@zimmreed.com,sab@zimmreed.com,az.clerk@zimmreed.com,hart.robinovitch@zimmreed.com

- **David B Rosenbaum**
  drosenbaum@omlaw.com,kdourlein@omlaw.com,ecfdc@omlaw.com

- **Michael Salcido**
  salcido@buckleyking.com,kennelly@buckleyking.com

- **Ex Kano S Sams , II**
  exkanos@csgrr.com,exkanos@csgrr.com

- **Brian Jay Schulman**
  schulmanb@gtlaw.com,fischerc@gtlaw.com

- **Robert F Serio**
  rserio@gibsondunn.com

- **Rebecca K Setlow**
  RSetlow@perkinscoie.com,docketphx@perkinscoie.com,rweidner@perkinscoie.com

- **Charlene S Shimada**
  charlene.shimada@bingham.com,frank.downing@bingham.com

- **Laura Elizabeth Sixkiller**
  sixkillerl@gtlaw.com,hinkell@gtlaw.com

- **Samantha A Smith**
  ssmith@csgrr.com

- **Richard A Speirs**
  rspeirs@zsz.com,dlanier@zsz.com

- **Lee Squitieri**
  lee@sfclasslaw.com

- **Stephen J Tully**
  stully@garrett-tully.com

- **Craig Varnen**
  cvarnen@irell.com

- **Frank Verderame**
  fverderame@plattner-verderame.com,edegrave@plattner-verderame.com

- **E Jeffrey Walsh**
  walshj@gtlaw.com,bergerp@gtlaw.com

- **Lillie A Werner**
  lwerner@irell.com

- **Debra J Wyman**
  debraw@csgrr.com

- **Joseph J Ybarra**
  joseph.ybarra@mto.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

**Manual Notice**

Michael J. VanOverbeke
Thomas C. Michaud
VanOverbeke Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
    313/578-1200
    313/578-1201 (Fax)