1  BUCKLEY KING
   MICHAEL SALCIDO
2  2020 North Central Avenue, Suite 1120
   Phoenix, AZ  85004
3  Telephone:  602/424-2550
   602/424-2566 (fax)
4  salcido@buckleyking.com

5  Liaison Counsel

6  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
7  DANIEL S. DROSMAN
   JEFFREY D. LIGHT
8  SCOTT H. SAHAM
   DEBRA J. WYMAN
9  SHANNON M. MATERA
   655 West Broadway, Suite 1900
10 San Diego, CA  92101
   Telephone:  619/231-1058
11 619/231-7423 (fax)
   dand@csgrr.com
12 jeffl@csgrr.com
   scotts@csgrr.com
13 debraw@csgrr.com
   smatera@csgrr.com
14
   Lead Counsel for Plaintiffs
15
   [Additional counsel appear on signature page.]
16
                    UNITED STATES DISTRICT COURT
17
                         DISTRICT OF ARIZONA
18

19 TEIMURAZ TSIREKIDZE, On Behalf of  )  No. 2:07-cv-02204-FJM
   Himself and All Others Similarly Situated,  )  **(Consolidated)**
                                      )
20                         Plaintiff,  )  <u>CLASS ACTION</u>
                                      )
21     vs.                            )  MEMORANDUM OF POINTS AND
                                      )  AUTHORITIES IN SUPPORT OF
22 SYNTAX-BRILLIAN CORP., et al.,     )  PLAINTIFFS' MOTION FOR FINAL
                                      )  APPROVAL OF CLASS ACTION
23                        Defendants.  )  SETTLEMENT AND PLAN OF
                                      )  ALLOCATION OF SETTLEMENT
24 ─────────────────────────────────  )  PROCEEDS

25                                        DATE:  February 12, 2010
                                          TIME:   2:00 p.m.
26                                        COURTROOM:  The Honorable
                                                   Frederick J. Martone
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
       SETTLEMENTS .............................................................................................. 3

III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .................. 5

       A.     The Settlement Is the Product of Extensive Arm's-Length
              Negotiations ...................................................................................... 5

       B.     The Settlement Appropriately Balances the Risks of Litigation and
              the Benefit to the Class of a Certain Recovery .................................. 6

              1.     Continued Litigation Poses Substantial Risks in Establishing
                     Liability and Damages ............................................................ 7

              2.     Balancing the Certainty of an Immediate Recovery Against
                     the Expense and Likely Duration of Trial Favors Settlement ......... 11

       C.     The Parties Have Engaged in Sufficient Pretrial Discovery and
              Proceedings to Identify the Strengths and Weaknesses of Their
              Cases ............................................................................................... 12

       D.     The Recommendations of Experienced Counsel Favor Approval of
              the Settlement ................................................................................. 12

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....................... 13

V.     CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able*,
        575 F.2d 1010 (2d Cir. 1978) ............................................................. 13

*Boyd v. Bechtel Corp.*,
        485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 6, 11

*DSAM Global Value Fund v. Altris Software, Inc.*,
        288 F.3d 385 (9th Cir. 2002) ............................................................... 7

*Dura Pharms., Inc. v. Broudo*,
        544 U.S. 336 (2005) ...................................................................... 7, 10

*Ellis v. Naval Air Rework Facility*,
        87 F.R.D. 15 (N.D. Cal. 1980),
        *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................................................... 4, 5

*Girsh v. Jepson*,
        521 F.2d 153 (3d Cir. 1975) ................................................................ 6

*Goldman v. Standard Ins. Co.*,
        341 F.3d 1023 (9th Cir. 2003) ........................................................... 10

*In re Chicken Antitrust Litig. Am. Poultry*,
        669 F.2d 228 (5th Cir. 1982) ............................................................. 13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
        No. MDL 901, 1992 U.S. Dist. LEXIS 14337
        (C.D. Cal. June 10, 1992) ................................................................. 13

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
        142 F.R.D. 588 (S.D.N.Y. 1992) ........................................................ 13

*In re Ikon Office Solutions, Inc.*,
        194 F.R.D 166 (E.D. Pa. 2000) ...................................................... 7, 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
        148 F.3d 283 (3d Cir. 1998) .............................................................. 11

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
        396 F. Supp. 2d 1178 (D. Colo. 2004) ................................................. 8

**Page**

*In re Stac Elec. Sec. Litig.,*
 89 F.3d 1399 (9th Cir. 1996) ............................................................. 8

*In re Sumitomo Copper Litig.,*
 189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................... 5

*In re Warner Commc'ns Sec. Litig.,*
 618 F. Supp. 735 (S.D.N.Y. 1985),
 *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................................................... 6

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
 720 F. Supp. 1379 (D. Ariz. 1989),
 *aff'd sub nom. Class Plaintiffs v. Seattle,*
 955 F.2d 1268 (9th Cir. 1992) ..................................................... 4, 13

*Kaufman v. Motorola, Inc.,*
 No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
 (N.D. Ill. Sept. 21, 2000) .................................................................. 10

*Lewis v. Newman,*
 59 F.R.D. 525 (S.D.N.Y. 1973) ........................................................... 6

*Linney v. Cellular Alaska P'ship,*
 No. C-96-3008 DLJ, 1997 WL 450064
 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........... 5

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
 671 F. Supp. 819 (D. Mass. 1987) ...................................................... 5

*Marshall v. Holiday Magic, Inc.,*
 550 F.2d 1173 (9th Cir. 1977) ............................................................ 3

*McGonigle v. Combs,*
 968 F.2d 810 (9th Cir. 1992) .............................................................. 7

*Milstein v. Huck,*
 600 F. Supp. 254 (E.D.N.Y. 1984) .................................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
 221 F.R.D. 523 (C.D. Cal. 2004) .................................................... 6, 12

*Officers for Justice v. Civil Serv. Comm'n,*
 688 F.2d 615 (9th Cir. 1982) ....................................................*passim*

**Page**

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................ 4

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ...................................................................... 3

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................... 3

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) .......................................................... 13


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k ..................................................................................................... 7, 8, 9
    §77k(e) ......................................................................................................... 8
    §78j(b) ...................................................................................................... 7, 8

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................... 13
    Rule 23(e) ............................................................................................. 1, 3, 4

17 C.F.R.
    240.10b-5 ..................................................................................................... 7


**SECONDARY AUTHORITIES**

Elliot J. Weiss, Janet E. Moser, *Enter Yossarian:
How to Resolve the Procedural Catch-22 that the
Private Securities Litigation Reform Act Creates*,
    76 Wash. U.L.Q. 457 (1998) ....................................................................... 7

## I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs City of St. Clair Shores Police & Fire Retirement System and City of New Haven Policemen and Firemen's Pension Fund submit this memorandum in support of their motion for final approval of the settlement of this Litigation for $10,000,000 in cash (plus accrued interest) and approval of the Plan of Allocation of settlement proceeds.[1]  The terms of the settlement are set forth in the Stipulation of Settlement dated as of October 28, 2009 ("Stipulation"), which has been previously submitted to the Court.[2]  Plaintiffs and their counsel have achieved a settlement that they believe is a highly favorable resolution of the Class's claims.

This case was carefully investigated and has been vigorously litigated from start to finish.  From the outset, Defendants have asserted aggressive defenses and expressed their belief that Plaintiffs could not prevail on the claims asserted.  The settlement was not achieved until Plaintiffs and their counsel (1) thoroughly reviewed and analyzed publicly available information regarding Syntax-Brillian Corporation ("Syntax" or the "Company"), including but not limited to its Securities and Exchange Commission ("SEC") filings, financial statements, press releases, reports about the Company, and analysts' reports and notes rendered by securities firms; (2) with the assistance of in-house and private investigators, located and interviewed numerous witnesses including former Syntax employees with knowledge of Plaintiffs' allegations; (3) consulted with and retained experts in accounting, damages, materiality, loss causation, and due diligence; (4) researched the law pertinent to the claims and potential defenses; (5) largely defeated Defendants' attacks on the pleadings; (6) obtained class certification over the objections of Defendants; (7) reviewed and analyzed hundreds of thousands of pages of documents; (8) monitored and protected the

---

[1]      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation.

[2]      Of the $10 million, the Individual Defendants shall pay $4.75 million, the Underwriter Defendants shall pay $2.75 million, and Grobstein shall pay $2.5 million.

1    Class's interest in Syntax's bankruptcy proceedings; (9) began preparation for trial; and (10)

2    participated in extensive settlement negotiations, including mediations with Judge Daniel

3    Weinstein (Ret.) and Judge Edward A. Infante (Ret.).

4         Lead Counsel, who are well-respected and experienced in prosecuting securities fraud

5    class actions, have concluded that the settlement is a very good result and is in the best

6    interest of the Class.   This conclusion is based on all the circumstances present here,

7    including the substantial risk, expense, and uncertainty in continuing the litigation through

8    summary judgment, trial, and probable appeal; the relative strengths and weaknesses of the

9    claims and defenses asserted; a complete analysis of the evidence adduced to date and the

10   legal and factual issues presented; past experience in litigating complex actions similar to the

11   present action; the serious disputes between the parties concerning the merits and damages;

12   the limited insurance proceeds available; and the likelihood of collecting on a significant

13   judgment if successful after trial and appeals.[3]   Moreover, Plaintiffs who were actively

14   involved in the Litigation, support the settlement and believe it is in the best interest of the

15   Class.[4]

16        In accordance with this Court's Order dated November 8, 2009, copies of the Notice

17   of Proposed Settlement of Class Action (the "Notice") were mailed to over 57,000 Class

18   Members.   In addition, a Summary Notice was published in *Investor's Business Daily* and

19   the Stipulation and its related exhibits, including the Notice and Proof of Claim form were

---

21   [3]     The Court is respectfully referred to the accompanying Declaration of Daniel S.
22   Drosman in Support of (1) Motion for Final Approval of Class Action Settlement and Plan of
     Allocation of Settlement Proceeds, and (2) an Award of Attorneys' Fees and Expenses
23   ("Drosman Declaration") for a more detailed history of the Litigation, the extensive efforts
     of counsel, and the factors bearing on the reasonableness of the settlement, Plan of
24   Allocation, and fee and expense application.

25   [4]     *See* accompanying Declaration of Carolyn W. Kone in Support of Motion for: (1)
     Final Approval of the Class Action Settlement; (2) the Plan of Allocation; and (3)
26   Application for an Award of Attorneys' Fees and Expenses and Declaration of James
     Haddad in Support of Motion For: (1) Final Approval of the Class Action Settlement; (2) the
27   Plan of Allocation; and (3) Application for an Award of Attorneys' Fees and Expenses,
     submitted herewith.

28

posted on the Claims Administrator's website.[5]   While the deadline for filing objections (January 22, 2010) has not passed, to date, only a single objection to any of the relief requested by Plaintiffs and their counsel has been received.[6]

For all of the reasons discussed herein and in the Drosman Declaration, it is respectfully submitted that the settlement is eminently fair, reasonable, and adequate to the Class and should be approved by the Court.   Moreover, the Plan of Allocation of settlement proceeds was developed by Plaintiffs' damage consultant and tracks the theory of damages asserted by Plaintiffs and is necessarily fair, reasonable, and adequate.

## II.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).   Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.   It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).   In deciding whether to approve the settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, adequate and reasonable."[7]   The Ninth Circuit has set forth factors which may be considered in evaluating the fairness of a class action settlement:

---

[5]      *See* paragraphs 3-11 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, and B) Publication of the Summary Notice, submitted herewith.

[6]      This objection (and any others) will be addressed in Plaintiffs' reply brief which is due on January 29, 2010.

[7]      *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989) ("*WPPSS*"), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. In exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

1  *Id.* (emphasis in original).  Applying these criteria demonstrates that this settlement warrants

2  the Court's approval.

3      Indeed, the settlement enjoys a presumption that it is fair and reasonable, because it is

4  the product of extensive arm's-length negotiations conducted by experienced and capable

5  counsel with a firm understanding of the strengths and weaknesses of their respective client's

6  positions.[8]

7  **III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

8      **A.  The Settlement Is the Product of Extensive Arm's-Length Negotiations**

9

10     Lead Counsel have many years of experience in litigating securities fraud class

11  actions and have negotiated numerous other class action settlements which have been

12  approved by courts throughout the country.  Defendants were also represented by highly

13  capable and very experienced counsel who zealously defended their clients.  As a result, the

14  settlement was reached after arm's-length negotiations by experienced counsel on both sides,

15  each with a comprehensive understanding of the strengths and weaknesses of each party's

16  respective claims and defenses.  The settlement negotiations with the Individual Defendants

17  included two mediation sessions with Judge Daniel Weinstein (Ret.) and were complicated

18  by Syntax's bankruptcy as well as disputes over the amount of available insurance.  In

19  addition, there were four other cases pending unrelated to this Litigation that were seeking to

20  obtain recovery under the same insurance proceeds.  Settlement negotiations with Grobstein

21

22  [8]     *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D.
   Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement
23  agreement was reached in arm's length negotiations, after relevant discovery [has] taken
   place create[s] a presumption that the agreement is fair"); *see also M. Berenson Co. v.*
24  *Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a
   proposed class settlement has been reached after meaningful discovery, after arm's length
25  negotiation, conducted by capable counsel, it is presumptively fair."); *Ellis v. Naval Air*
   *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *In*
26  *re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("[A] presumption of
   fairness, adequacy and reasonableness may attach to a class settlement reached in arms-
27  length negotiations between experienced, capable counsel after meaningful discovery.")
   (emphasis omitted).

28

1   included a mediation with Judge Edward A. Infante (Ret.) and were similarly complicated by

2   disputes over the amount of available insurance, as well as another pending action unrelated

3   to this Litigation.  Plaintiffs engaged in separate settlement negotiations with the Underwriter

4   Defendants.  Lead Counsel zealously advanced the Class's positions and were fully prepared

5   to continue to litigate rather than accept a settlement that was not in the best interest of the

6   Class.  After agreements-in-principle to settle were reached, negotiations regarding the terms

7   of the Stipulation, including the scope of releases, establishment of opt-out thresholds, and

8   form and content of notice to the Class were conducted.  As a result of the negotiations and

9   mediations, there can be no question that the settlement was the result of hard fought arm's-

10  length negotiations and "not the product of fraud or overreaching by, or collusion between,

11  the negotiating parties."  *Officers for Justice*, 688 F.2d at 625.

12          **B.      The Settlement Appropriately Balances the Risks of Litigation
                      and the Benefit to the Class of a Certain Recovery**

13          To determine whether the proposed settlement is fair, reasonable, and adequate, the

14  Court may balance the benefits achieved for the Class against the continuing risks of

15  litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F.

16  Supp. 610, 616-17 (N.D. Cal. 1979); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735,

17  741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words,

18

19          "[t]he Court shall consider the vagaries of litigation and compare the
            significance of immediate recovery by way of the compromise to the mere
            possibility of relief in the future, after protracted and expensive litigation.  In
20          this respect, 'It has been held proper to take the bird in hand instead of a
            prospective flock in the bush.'"

21  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

22  (citations omitted).

23          In the context of approving class action settlements, courts attempting to balance these

24  factors have recognized "that stockholder litigation is notably difficult and notoriously

25  uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  This is even more so

26  today in this post-PSLRA environment amid defendants' constant attempts to push the

27  envelope and contours of the PSLRA.  While Plaintiffs and their counsel believe that they

28

1  could prove the claims asserted, there was no guarantee that they would prevail on

2  Defendants' motions for summary judgment, and if successful, at trial and ultimately collect

3  after post-trial motions and appeals, a judgment larger than the $10 million obtained for the

4  Class in the settlement.  Indeed, post-PSLRA rulings make it clear that the risk of no

5  recovery has increased substantially since the PSLRA was adopted in 1995.[9]  *See Securities*

6  *Class Action Case Filings 2007: A Year in Review* (Cornerstone Research 2008),

7  http://securities.cornerstone.com/pdfs/YIR2007.pdf.

8      The settlement recognizes the inherent risks of extremely complex litigation involving

9  a panoply of difficult legal and factual issues.  As discussed herein and in the Drosman

10  Declaration, the risks of continued litigation when weighed against the substantial and

11  certain recovery for the Class confirms the reasonableness of the settlement.  The settlement

12  is unquestionably better than another distinct possibility – no or little recovery for the Class.

### 1.    Continued Litigation Poses Substantial Risks in Establishing Liability and Damages

13

14

15      Even though Plaintiffs largely survived Defendants' motions to dismiss, the Class

16  faced serious obstacles to recovery, both with respect to liability and damages.  The principle

17  claims asserted in the Litigation on behalf of the Class were based on §10(b) of the Securities

18  Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and §11 of the Securities Act

19  of 1933.  To prevail on their §10(b) claims, Plaintiffs would bear the burden of proving (a) a

20  misstatement or omission, (b) of material fact, (c) made with scienter, (d) on which plaintiffs

21  relied, and (e) that caused loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005);

22  *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992); *DSAM Global Value Fund v. Altris*

23

24  [9]    *See In re Ikon Office Solutions, Inc.*, 194 F.R.D 166, 194 (E.D. Pa. 2000)
(acknowledging that "securities actions have become more difficult from a plaintiff's

25  perspective in the wake of the PSLRA").  The court in *Ikon* went on to describe a number of additional factors that have made litigation of securities class actions more difficult, stating

26  "The Act . . . substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs." *Id*. at 194-95; *see also* Elliot J.

27  Weiss, Janet E. Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities Litigation Reform Act Creates*, 76 Wash. U.L.Q. 457, 459 (1998) (noting that the PSLRA made it more difficult to set forth a claim and survive a motion to dismiss).

28

*Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002).  Thus, Plaintiffs would have to prove that Defendants were responsible for material misstatements or omissions of fact in connection with Syntax securities, that the Class relied upon Defendants' alleged misconduct, that each Defendant acted with the requisite scienter, and that the Class suffered damages as a result of Defendants' conduct.  With respect to Plaintiffs' §11 claims, Plaintiffs would have to prove: "'(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment.'"  *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir. 1996) (citation omitted).  With respect to the §11 claims, Defendants had a "due diligence" defense to liability and a "market decline" defense to damages.[10]

While Plaintiffs believe that their §10(b) and §11 claims are strong, establishing liability at trial would by no means be guaranteed.  Plaintiffs alleged that Defendants made false and misleading statements regarding the Company's reported financial results by improperly recording consignment sales to an Asia distributer, South China House of Technology ("SCHOT"), and roundtrip "tooling deposits" made to Taiwan Kolin Ltd. ("Kolin") during the Class Period.  Although Plaintiffs believe that the evidence adduced to date supports their claims, they were aware that there was counter evidence and substantial other obstacles to the achievement of a significant judgment after trial and appeals.

Proving Plaintiffs' claims entailed a number of complex issues including the application of accounting rules and principles.  The accounting issues related to the alleged false financial statements issued during the Class Period were complex and because "GAAP generally tolerates a range of reasonable treatments" would be difficult to prove.  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1186 (D. Colo. 2004).  Presenting these complex issues to a jury posed risks to the Class's hopes for success at trial.  While

---

[10]    Section 11(e) of the Securities Act of 1933 provides: "[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from [the] part of the registration statement [that contains the material misstatement or omission] . . . such portion of or all such damages shall not be recoverable."

1   Plaintiffs would have presented expert testimony supporting their allegations, Defendants

2   would have called on expert(s) to contradict Plaintiffs' experts and opine that there was no

3   accounting shenanigans.  *See, e.g.*, Expert Report of Timothy Lucas.  Plaintiffs and their

4   counsel could not be certain that they would succeed in making the jury believe Plaintiffs'

5   experts or even understand these matters well enough to reach a determination in the Class's

6   favor.  With respect to Plaintiffs' §11 claims, the Individual and Underwriter Defendants

7   have retained experts to establish these defendants' due diligence defense.  For example,

8   Stanley Keller, an expert retained by the Underwriter Defendants opines: "Based on my

9   experience and review of the materials received to date . . . , I believe that the Underwriters

10  conducted a reasonable and customary due diligence investigation in the circumstances that

11  meets the statutory standards for establishing a defense against liability for the misstatements

12  alleged by Plaintiff."  *See* Expert Report of Stanley Keller, at pp. 1-2.

13         There is no question that Plaintiffs would have faced the risks of establishing liability

14  posed by conflicting testimony and evidence.  The parties retained highly qualified experts

15  supporting their respective positions on determinative issues.  There could be no way of

16  predicting which interpretations, inferences, or testimony this Court would accept.

17  Moreover, there was no certainty that additional discovery would tend to support or disprove

18  Plaintiffs' allegations.  The risks of establishing liability posed by conflicting testimony and

19  evidence would be exacerbated by the following risks inherent in all shareholder litigation,

20  including the unpredictability of a lengthy and complex jury trial, the risk that witnesses

21  could suddenly become unavailable or jurors could react to the evidence in unforeseen ways;

22  the risk that the jury would find that some or all of the alleged misrepresentations and

23  omissions were not material; and the risk that the jury would find that Defendants reasonably

24  believed in the appropriateness of their actions at the time.

25         Even if Plaintiffs were to overcome the significant risks of proving liability, they

26  would still face the risks of proving loss causation and damages.  The issue of loss causation

27  would have been the subject of significant dispute if absent settlement.  To establish

28  damages, Plaintiffs would have to demonstrate loss causation – that they suffered damages

1    when the truth of Defendants' alleged false and misleading statements became known to the

2    market. *Dura*, 544 U.S. at 341.  Here, Defendants would present expert testimony that there

3    was no link between the information revealed by Syntax on September 12, 2007 and

4    November 14, 2007, that caused the decline in the price of Syntax securities which Plaintiffs

5    rely on to establish loss causation and Plaintiffs' allegations.  For example, Andrew H.

6    Roper, Ph.D., opines that: "Plaintiffs' alleged damages arising from the Section 10(b),

7    Section 11, and Section 12 claims are zero because plaintiffs' losses were not caused by the

8    market learning the truth."  *See* Expert Report of Andrew H. Roper, Ph.D, at p. 2; *see also*

9    Expert Report of Vinita M. Juneja, Ph.D.  While Plaintiffs disagree that the disclosures made

10   by Syntax on September 12, 2007 and November 14, 2007 are unrelated to the alleged

11   misstatements and retained an expert who would testify that the disclosures were in fact

12   related to Plaintiffs' allegations and that the Class suffered significant damages, at trial, a

13   jury might find otherwise and award a mere fraction of the damages Plaintiffs seek, or none

14   at all.

15          Underscoring the uncertainty in this area, some courts have focused on aggregate

16   damage calculations in securities class actions, and one court even precluded a plaintiffs'

17   expert from using a particular trading model to calculate aggregate damages suffered by the

18   class.  *See, e.g.*, *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627

19   (N.D. Ill. Sept. 21, 2000).  Although Lead Counsel believe that they would be able to provide

20   convincing expert testimony as to damages, and establish substantial damages at trial, in a

21   "battle of the experts," a jury might disagree with Plaintiffs' experts and find in favor of

22   Defendants.  *See, e.g.*, *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003)

23   (noting that jury is tasked with weighing and resolving conflicting expert testimony).

24          Setting aside the difficulties in proving Plaintiffs' claims, practical reasons dictate that

25   settlement at this juncture is in the best interest of the Class.  There were limited insurance

26   proceeds available to the Individual Defendants and Grobstein to fund a settlement or

27   judgment after trial.  The insurance proceeds available to the Individual Defendants were

28   being used to fund the costs of defending this Litigation, as well as four other unrelated

1   actions pending against former officers and directors of Syntax.  Similarly, the insurance

2   proceeds available to Grobstein were being used to fund the costs of defending this

3   Litigation, as well as another unrelated action.  As a result, resolving the case now is in the

4   best interest of the Class because further litigation would require a substantial amount of

5   attorney time and expense which would only further deplete the available insurance to fund a

6   settlement or judgment for the benefit of the Class.

7            **2.      Balancing the Certainty of an Immediate Recovery
                        Against the Expense and Likely Duration of Trial Favors**
8            **Settlement**

9            The immediacy and certainty of a recovery is a factor for the Court to balance in

10  determining whether this proposed settlement is fair, adequate, and reasonable.  Courts

11  consistently have held that "[t]he expense and possible duration of the litigation should be

12  considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F.

13  Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F.

14  Supp. at 616-17.

15           If Plaintiffs successfully defeated Defendants' summary judgment motions, the trial of

16  this Litigation would likely run several weeks, and involve numerous attorneys, witnesses,

17  experts, and the introduction of voluminous documentary evidence.  Even if successful at

18  trial, Defendants would undoubtedly appeal, leading to additional delay and expense.  Thus,

19  even if the Class were to recover a larger judgment after trial, which is certainly not

20  guaranteed or even likely, the additional delay, through trial, post-trial motions, and appeals,

21  would deny the Class any recovery for years.  By contrast, the settlement secures a

22  substantial and certain benefit for the Class in this highly complex and contested action,

23  undiminished by further expenses, and without the delay, risk, and uncertainty of continued

24  litigation.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d

25  283, 318 (3d Cir. 1998) (settlement favored where "the trial of this class action would be a

26  long, arduous process requiring great expenditures of time and money on behalf of both the

27  parties and the court").

28

- 11 -

C.     **The Parties Have Engaged in Sufficient Pretrial Discovery and Proceedings to Identify the Strengths and Weaknesses of Their Cases**

To ensure that Plaintiffs had access to sufficient information to evaluate their case and to assess the propriety of a settlement, the stage of the proceedings and the extent of discovery conducted are additional factors that are considered in determining the fairness of a settlement. *Officers for Justice*, 688 F.2d at 625. Here, this Litigation was pending for some two years and the parties were preparing for an upcoming trial date when the settlement was reached. By that time, Lead Counsel had (1) conducted an extensive investigation into the facts alleged; (2) served written discovery requests on Defendants and various third parties, including interrogatories, document requests, and requests for admissions; (3) reviewed and analyzed over 600,000 pages of documents produced by Defendants and third parties; (4) completed significant expert discovery, including the exchange of expert reports and rebuttal reports; (5) opposed two motions for summary judgment; (6) participated in extensive settlement negotiations, including mediation with the Individual Defendants and Grobstein; and (7) began preparation for trial.

There is no question that Plaintiffs and Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendants, and the defenses raised thereto, as well as the substantial risks of continued litigation, and to conclude that the settlement provides a fair, adequate, and reasonable recovery, and is in the best interest of the Class. Having sufficient information to properly evaluate the Litigation, Plaintiffs have managed to settle this Litigation on terms very favorable to the Class and without the substantial additional expense, risk, and uncertainty of continued litigation. This factor weighs in favor of this Court's approval of the settlement.

D.     **The Recommendations of Experienced Counsel Favor Approval of the Settlement**

"'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Nat'l Rural*, 221 F.R.D. at 528 (citation omitted). Lead Counsel, having carefully considered and evaluated, *inter alia*, the

1   relevant legal authorities and evidence to support the claims asserted against Defendants, the

2   likelihood of prevailing on these claims, the risk, expense, and duration of continued

3   litigation, the likely appeals and subsequent proceedings necessary if Plaintiffs did prevail

4   against Defendants at trial, have concluded that the settlement is clearly fair, reasonable, and

5   adequate and in the best interest of the Class.  Lead Counsel have significant experience in

6   securities and other complex class action litigation and have negotiated numerous other

7   substantial class action settlements throughout the country.  Where, as here, the settlement is

8   the product of serious, informed non-collusive negotiations after extensive litigation,

9   significant weight should be attributed to the belief of experienced counsel that settlement is

10  in the best interest of the class.  *See In re First Capital Holdings Corp. Fin. Prods. Sec.*

11  *Litig.*, No. MDL 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992)

12  (finding belief of counsel that the proposed settlement represented a favorable result for class

13  a compelling factor in approving settlement); *WPPSS*, 720 F. Supp. at 1392.

14  **IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

15          Plaintiffs also seek approval of the Plan of Allocation of the settlement proceeds (the

16  "Plan").  The Plan was set forth in the Notice mailed to Class Members.  The Plan was

17  developed with the assistance of Lead Counsel's in-house damage consultant and tracks the

18  theory of damages asserted by Plaintiffs.  Assessment of a plan of allocation in a class action

19  under Federal Rule of  Civil Procedure 23 is governed by the same standards of review

20  applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Ikon*, 194

21  F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  District

22  courts enjoy "broad supervisory powers over the administration of class-action settlements to

23  allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*,

24  575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669

25  F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a reasonable, rational

26  basis, particularly if recommended by "experienced and competent" class counsel.  *White v.*

27  *NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer*

28  *Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

1    The objective of a plan of allocation is to provide an equitable basis upon which to

2  distribute the settlement fund among eligible class members.  Here, the Plan was developed

3  by Lead Counsel's damage consultant and it reflects an assessment of the damages that could

4  have been recovered under the theories asserted in the case.  The Plan will result in a fair and

5  equitable distribution of the proceeds among Class Members who submit valid claims and it

6  should be approved.

7  **V.     CONCLUSION**

8    For all the reasons discussed herein, Plaintiffs respectfully request that this Court

9  approve the settlement of this Litigation and the Plan as fair, reasonable, and adequate.

10  DATED:  January 8, 2010                    Respectfully submitted,

11                                             COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
12                                             DANIEL S. DROSMAN
                                               JEFFREY D. LIGHT
13                                             SCOTT H. SAHAM
                                               DEBRA J. WYMAN
14                                             SHANNON M. MATERA

15

16                                                    s/Jeffrey D. Light
                                               _____
17                                             JEFFREY D. LIGHT

18                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
19                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)

20                                             Lead Counsel for Plaintiffs

21                                             BUCKLEY KING
                                               MICHAEL SALCIDO
22                                             2020 North Central Avenue, Suite 1120
                                               Phoenix, AZ  85004
23                                             Telephone:  602/424-2550
                                               602/424-2566 (fax)

24                                             Liaison Counsel

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VANOVERBEKE MICHAUD
  & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

S:\Settlement\Syntax-Brillian.set\BRF SETTLEMENT 00063876.doc

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 8, 2010.

s/Jeffrey D. Light
JEFFREY D. LIGHT

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  jeffl@csgrr.com

# Mailing Information for a Case 2:07-cv-02204-FJM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce A Abbott**
  Bruce.Abbott@mto.com,joannette.driver-moore@mto.com,Valentina.Neufeld@mto.com

- **Joseph G Adams**
  jgadams@swlaw.com,mgarsha@swlaw.com,docket@swlaw.com

- **Shaunt T Arevian**
  sarevian@irell.com

- **Jonathan E Behar**
  jbehar@csgrr.com,jbehar@csgrr.com,aromero@csgrr.com

- **James J Belanger**
  jbelanger@csblaw.com,ejames@csblaw.com

- **Maureen Beyers**
  mbeyers@omlaw.com,lsmock@omlaw.com,ecfdc@omlaw.com

- **Avi Braz**
  avi.braz@mto.com

- **Gustavo Fabian Bruckner**
  bruckner@whafh.com

- **H Michael Clyde**
  MClyde@perkinscoie.com,docketphx@perkinscoie.com,lsandoval@perkinscoie.com

- **Sean K Collins**
  scollins@csgrr.com,keagen@csgrr.com

- **Efren A Compean**
  ecompean@garrett-tully.com,bpena@garrett-tully.com

- **Christopher Robert Cowan**
  ccowan@irell.com

- **Michelle Craven**
  mcraven@gibsondunn.com

- **Jonathan Cobb Dickey**
  jdickey@gibsondunn.com

- **Daniel S Drosman**
  ddrosman@csgrr.com,tholindrake@csgrr.com

- **Douglas H Fitch**
  dfitch@jbhhlaw.com,mterry@jbhhlaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Francis M Gregorek**
  gregorek@whafh.com

- **Susan L Hoffman**
  susan.hoffman@bingham.com,gloria.moonesinghe@bingham.com

- **Joel Philip Hoxie**
  jhoxie@swlaw.com,jkfisher@swlaw.com,docket@swlaw.com

- **Mark P Hummels**
  mhummels@omlaw.com,bwendt@omlaw.com,ecfdc@omlaw.com

- **Jennifer Y Lai**
  jlai@csgrr.com

- **James Raza Lawrence**
  razalawrence@gmail.com

- **Rebecca Justice Lazarus**
  rjustice@gibsondunn.com,rmcbain@gibsondunn.com

- **Daniel P Lefler**
  dlefler@irell.com

- **Frank Lewis**
  franklewis@aol.com

- **Jeffrey D Light**
  jeffl@csgrr.com,jstark@csgrr.com

- **John L Lin**
  jlin@garrett-tully.com

- **Jennifer Lopez**
  jennifer.lopez@bingham.com

- **Robert A Mandel**
  mandelr@gtlaw.com,coles@gtlaw.com

- **Shannon McKenna Matera**
  smatera@csgrr.com,Hkharadjian@csgrr.com,Rduenez@csgrr.com

- **Kevin Michael McGee**
  kmcgee@zsz.com

- **Gregory Mark Nespole**
  nespole@whafh.com

- **John David Pernick**
  john.pernick@bingham.com,frank.downing@bingham.com

- **Patricia Lee Refo**
  prefo@swlaw.com,jaltendorf@swlaw.com,docket@swlaw.com

- **Darren J Robbins**
  darrenr@csgrr.com,E_File_SD@csgrr.com

- **Hart Lawrence Robinovitch**
  hlr@zimmreed.com,sab@zimmreed.com,az.clerk@zimmreed.com,hart.robinovitch@zimmreed.com

- **David B Rosenbaum**
  drosenbaum@omlaw.com,kdourlein@omlaw.com,ecfdc@omlaw.com

- **Michael Salcido**
  salcido@buckleyking.com,kennelly@buckleyking.com

- **Ex Kano S Sams , II**
  exkanos@csgrr.com,exkanos@csgrr.com

- **Brian Jay Schulman**
  schulmanb@gtlaw.com,fischerc@gtlaw.com

- **Robert F Serio**
  rserio@gibsondunn.com

- **Rebecca K Setlow**
  RSetlow@perkinscoie.com,docketphx@perkinscoie.com,rweidner@perkinscoie.com

- **Charlene S Shimada**
  charlene.shimada@bingham.com,frank.downing@bingham.com

- **Laura Elizabeth Sixkiller**
  sixkillerl@gtlaw.com,hinkell@gtlaw.com

- **Samantha A Smith**
  ssmith@csgrr.com

- **Richard A Speirs**
  rspeirs@zsz.com,dlanier@zsz.com

- **Lee Squitieri**
  lee@sfclasslaw.com

- **Stephen J Tully**
  stully@garrett-tully.com,rgootkin@garrett-tully.com

- **Craig Varnen**
  cvarnen@irell.com

- **Frank Verderame**
  fverderame@plattner-verderame.com,edegrave@plattner-verderame.com

- **E Jeffrey Walsh**
  walshj@gtlaw.com,bergerp@gtlaw.com

- **Lillie A Werner**
  lwerner@irell.com

- **Debra J Wyman**
  debraw@csgrr.com

- **Joseph J Ybarra**
  joseph.ybarra@mto.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

**Manual Notice**

Michael J. VanOverbeke
Thomas C. Michaud
VanOverbeke Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
 313/578-1200
 313/578-1201 (Fax)